**Deborah Ann WILSON, Plaintiff,**

v.

**GROUP HOSPITALIZATION AND MEDICAL SERVICES, INC., t/a Blue Cross and Blue Shield of the National Capital Area, Defendant.**

Civ. A. No. 92–0859 (HHG).

United States District Court, District of Columbia.

May 4, 1992.

Anthony Wilson, Landover, Md., Victor E. Long, Washington, D.C., for plaintiff.

Charles J. Steele, Mary Atchley Jester, Foley & Lardner, Washington, D.C., for defendant.

## OPINION

HAROLD H. GREENE, District Judge.

In this case plaintiff, a victim of advanced breast cancer, seeks a preliminary injunction to enjoin defendant, her group health insurance carrier under an ERISA program, 29 U.S.C. § 1001 *et seq.*, from refusing to pay for the only treatment that may abate her cancer and save her life. At issue is an amendment to the insurance plan by the insurer that it claims to have eliminated from coverage autologous bone marrow transplants. The Court concludes that notice of the amendment was insufficient, and that the amended plan does not exclude the treatment in question. The motion for a preliminary injunction will be granted.

## I

### *Facts*

Plaintiff Deborah Wilson is a thirty-seven year old woman who suffers from advanced breast cancer. Plaintiff's employer, International Life Sciences Institute/Nutrition Foundation (ILSINF), entered into a benefits plan for its employees with defendant Group Hospitalization and Medical Services, Inc., also known as Blue Cross/Blue Shield of the National Capital Area (hereinafter Blue Cross). The plan is governed by ERISA. 29 U.S.C. § 1132(a)(3). Plaintiff has applied for coverage from Blue Cross for the needed chemotherapy-bone marrow transplant, but the application was denied[1] on the basis of an amendment to the benefits contract adopted on November 30, 1991.

Plaintiff was scheduled to undergo her chemotherapy treatment beginning 6:30 a.m. on April 14, 1992 at the Johns Hopkins Hospital in Baltimore, Maryland. Johns Hopkins refused to treat her unless there was a guarantee or certification of pay-

ment by plaintiff herself or by her insurance carrier. Plaintiff personally could not guarantee payment, and her insurance carrier Blue Cross refused to certify that it would pay, relying on the November 30, 1991 amendment to the health plan.

On April 13, 1992 this Court issued a temporary restraining order enjoining Blue Cross from refusing to certify that it would cover the costs of plaintiff's treatment under the plan. With TRO in hand, plaintiff was admitted as scheduled and began to receive the needed treatment. By agreement of the parties, the temporary restraining order was extended until today, May 4, 1992. Following the filing of briefs, a hearing on the motion for a preliminary injunction was held on May 1, 1992.

The procedure at issue is known as high dose chemotherapy with autologous bone marrow transplant. In this procedure, bone marrow is extracted from the patient's body and purified of cancer cells. Meanwhile, the patient is treated to extraordinarily high doses of chemotherapy that would destroy her bone marrow and kill her if the marrow were not removed. With the bone marrow removed, the higher doses of chemotherapy are better able to treat—that is, kill—the cancer cells than the lower levels used ordinarily. After the chemotherapy, the bone marrow is returned to the body.

Ms. Wilson received four days of the chemotherapy treatment. Six days later her bone marrow was returned to her body. With the chemotherapy itself completed, Ms. Wilson remains in Johns Hopkins Hospital for another five to six weeks. She is currently receiving blood stimulants and medication to guard against infections while her immune system is particularly vulnerable.

The Court must weigh four factors in considering a motion for a preliminary injunction: (1) the likelihood that plaintiff will succeed on the merits; (2) the threat of irreparable harm to plaintiff if the injunc-

---

**1.** Plaintiff states that she has been told that the application will be denied, but she has yet to receive a written denial. In any event, the hos-pital will not continue to treat plaintiff without assurance from Blue Cross that it will pay.

tion is not granted; (3) the possibility that defendant and others will suffer substantial harm in the event that injunctive relief is granted; and (4) the interest of the public. *Population Institute v. McPherson,* 797 F.2d 1062, 1078 (D.C.Cir.1986); *Washington Metropolitan Area Transit Commission v. Holiday Tours, Inc.,* 559 F.2d 841, 843 (D.C.Cir.1977).

## II

### *Sufficiency of Notice*

■ It is undisputed that under ERISA insurance benefits may be amended, added, or deleted. *See, e.g., Young v. Standard Oil (Indiana) and Amoco Oil Co.,* 849 F.2d 1039 (7th Cir.1988); *Moore v. Reynolds Metals Co. Retirement Program for Salaried Employees,* 740 F.2d 454, 456 (6th Cir.1984). But notice of changes must be given in a timely and understandable manner. The issue is whether notice of the amendment to the plan satisfied the requirements of ERISA.

In the recent past, Blue Cross, along with a host of other insurance carriers, refused to cover the costs of the bone marrow treatment, claiming that it was excluded as an "experimental" or "investigative" treatment under the terms of its plan. Employees denied coverage, however, began to litigate whether the treatment was experimental, and they met with increasing success. *See, e.g., Pirozzi v. Blue Cross/Blue Shield of Virginia,* 741 F.Supp. 586, 591 (E.D.Va.1990). Blue Cross has acknowledged both in its papers and at the hearing on the preliminary injunction that it was because it could no longer exclude coverage of the treatment as "experimental," that it sought to amend the plan directly to achieve the exclusion. That amendment is the focus of this case.

As noted, under ERISA the insurance carrier has the contractual power to change the terms of the insurance policy. Notice of such a change must be made available to the employer who is the sponsor of the ERISA benefits plan, so that it may decide whether to continue under the carrier's terms or to seek a new and different plan with another carrier. Thus, timely and effective notice of any change is critical.

Blue Cross purports to have notified plaintiff's employer, ILSINF,[2] of the amendment at issue by a letter dated November 30, 1991. However, the timeliness and effectiveness of Blue Cross' notice to the employer are in serious doubt.

It appears that ILSINF did receive notice of the amendment on January 4, 1992. However, that notice, four days after the effective date of the amendment, appears to be insufficient.[3] Blue Cross asserts that it sent notice to the employer on November 27, 1991, but there is no record evidence to support that claim that notice was sent on that date. Indeed, plaintiff argues with some persuasiveness that it is unlikely that the November 30, 1991 amendment was mailed three days before it ostensibly existed.[4]

More important, the substance of the notice is also unsatisfactory. Blue Cross asserts that the chemotherapy-bone marrow treatment at issue here is excluded by virtue of a plan change described under the heading "organ transplants." The notice states that

> services or supplies for or related to transplant procedures, including human organ transplants, are not covered, except for the following procedures:
>
> .    .    .    .    .
>
> Autologous bone marrow for:
> –Non–Hodgkin's lymphoma, Stage III A or B, or Stage IV A or B;
> –Hodgkin's lymphoma Stage III A or B, or Stage IV A or B;
> –Neuroblastoma, Stage III or Stage IV;

---

**2.** Blue Cross may not have been obligated to provide plaintiff herself with notice. *See Davis v. Liberty Mutual Insurance Co.,* 871 F.2d 1134 (D.C.Cir.1989).

**3.** Notice is to be given thirty days prior to any change.

**4.** The timeliness of the notice at issue may be clarified by further discovery. As long as it is unclear that notice was not timely, as it is at this juncture, it is appropriate to maintain the status quo by injunctive relief.

–Acute lymphocytic leukemia following first or second relapse;

–Acute non-lymphocytic leukemia following first or second relapse.

As discussed in greater detail in Section IV, *infra*, it is not at all apparent that high dose chemotherapy is excluded from coverage simply because bone marrow transplantation is a necessary incident to the procedure. The plan does and continues to cover chemotherapy for breast cancer. The Blue Cross letter did not effectively give notice to the employer that an employee beneficiary undergoing chemotherapy treatment would be denied coverage simply because related bone marrow removal and transplantation is also necessary.

The ineffectiveness of the notice is most clearly evidenced by Blue Cross' ultimate amendment. That amendment, which took effect on January 1, 1992, clearly states that high dose chemotherapy treatment is excluded "when supported by transplant procedures." Blue Cross/Blue Shield 1992 Service Benefit Plan Brochure for the Federal Employee Program. The difference between the explicitness of the notice and the actual amendment underscores that the employer was not effectively advised of Blue Cross' prospective change.

Blue Cross' own citations emphasize the importance of the *employer's* decision in what benefits are to be conferred under its ERISA program. *See, e.g., Nazay v. Miller*, 949 F.2d 1323, 1328 (3d Cir.1991); *Moore v. Reynolds Metals Co. Retirement Program for Salaried Employees*, 740 F.2d 454, 456 (6th Cir.1984). Thus, where notice to the employer is not timely or effective, ERISA is violated because the employer is not able to make a voluntary and informed choice as to its benefits program.

## III

### *Defendant's Fiduciary Duty and Conflict of Interest*

■ Under ERISA the employer administers the benefits plan and, in the case of health insurance, adjudicates claims for coverage under the plan. The employer's role in that capacity is that of a fiduciary. *See* 29 U.S.C. § 1104. However, frequently the employer delegates responsibility for adjudication of claims to the insurance carrier, as indeed was the case here. With its assumption of the role of a claims adjudicator, the carrier also assumes the employer's role as fiduciary. *See Brown v. Blue Cross & Blue Shield of Alabama*, 898 F.2d 1556, 1561 (11th Cir.1990).

The insurance carrier which both issues a policy and administers it occupies dual roles that create an inherent conflict of interest. *See id.* In its fiduciary role, the insurance company interprets the plan, determining what expenses are covered. This fiduciary, however, is the same company that will ultimately pay for those expenses from its own coffers. Thus, the insurance company's "fiduciary role lies in perpetual conflict with its profit-making role as a business." [5] *Id.* The inherent conflict between the fiduciary responsibilities of the insurance carrier and its own financial interests renders the insurance carrier's interpretation of the plan suspect and requires that the Court scrutinize the carrier's interpretation with great care to determine whether the carrier acted free of self-interest. *See id.* at 1566–68.

In this instance, Blue Cross has conceded that it acted out of self-interest. It has stated, as discussed *supra*, that because courts were ruling that the treatment at issue here was not "experimental" or "investigative," it could no longer deny coverage on that basis, and for that reason it sought to change the policy to achieve that goal. In other words, when Blue Cross, in its role as a fiduciary to plaintiff and others like her, was faced with having to pay for the treatment, it turned to take back the benefit in its capacity as the insurance carrier. This is a classic conflict of interest. *See Restatement (Second) of Trusts* § 187, comment d. Accordingly, the Blue

---

**5.** Even where, as here, the insurer is a not-for-profit enterprise, the same principle applies as the profit motive is supplanted by its accounting cousin, the motive to break even.

Cross interpretation of the amendment is not entitled to deference.[6]

## IV

### Interpretation of the Amendment

■ The Blue Cross notice of the amendment to the plan stated that "services or supplies for or related to transplant procedures" are not covered except "autologous bone marrow for" the five diseases identified.[7] However, plaintiff did not seek a transplant as such. In her case and those of others like her, it is chemotherapy that is generally regarded as the most effective treatment for her cancer in its advanced stages. Accordingly, plaintiff sought high dose chemotherapy which will save her life, and to that chemotherapy a bone marrow transplant is a necessary incident.

There is no dispute that under all normal circumstances the health plan covers plaintiff's chemotherapy and any hospital stay. Blue Cross seeks to escape that undisputed and indisputable conclusion on the basis of the argument that plaintiff's chemotherapy treatment, and every other facet of her hospital stay and current treatment, are excluded from coverage because they are "related to" a bone marrow transplant.

Eighty to ninety percent of plaintiff's treatment involves chemotherapy. Thus to consider that her primary treatment and every other facet of her treatment and recovery are removed from coverage through the narrow siphon of the words "related to" is to contort both the facts and the language.[8] This is illustrated most dra-

matically by the circumstance that Blue Cross refuses to pay even for plaintiff's current recuperative stay in the hospital on the basis that it, too, is "related to" the transplant—even though the transplant was effected in the past and is not to be repeated. Under these circumstances, to say that payment is excluded by virtue of the notion that the entire treatment, in all its facets, past, present, and future, is "related to" bone marrow transplantation would truly have the tail wagging the dog.[9] That interpretation proffered by Blue Cross is too clever by half.

In the context of a request for a preliminary injunction, the plaintiff need not demonstrate an absolute certainty of success on the merits. *Washington Metropolitan Area Transit Commission, supra,* 559 F.2d at 844. It is enough that she raises legal questions that are sufficiently serious and substantial that a more thorough investigation is appropriate. *Population Institute v. McPherson, supra,* 797 F.2d at 1078. This case is apparently one of first impression, and the Court concludes that it involves serious and substantial issues.

## V

### Irreparable Injury

■ Plaintiff remains in the hospital where medical personnel can continue to combat her cancer, her recovery from the physical trauma of the treatment can be effected, and her depleted immune system can be bolstered. Particularly in the context of the balance of injuries, it cannot be

---

6. This conclusion is also supported by the fact that the contract should be interpreted against the carrier as the drafter of that contract.

7. As noted *supra,* the actual amendment more explicitly excluded coverage for high dose chemotherapy "when supported by transplant procedures." The Court will construe the notice, however, rather than the ultimate amended plan because ERISA emphasizes the informed choice of the employer in choosing a benefits package and that instrument may only be changed through proper notice. The notice of amendment and the amended plan are materially different, and the carrier will be held to that which purportedly gave notice.

8. The Court's conclusion is consistent with the accepted standard of construction of benefit

plans. The Court is to read a benefits plan in a manner that avoids forfeiture of benefits. *Helms v. Monsanto,* 728 F.2d 1416, 1420 (11th Cir.1984). Defendant's reading would vest the words "related to" with a wholesale forfeiture of benefits.

9. Suppose that the policy provided that the furnishing of television entertainment in the hospital room and subjects related thereto are excluded. If the Blue Cross argument were carried to its logical conclusion, could the insurance carrier refuse to pay for all medical procedures effected in connection with that room on the basis that they are related to the provision of television entertainment?

sufficiently emphasized that plaintiff suffers from advanced breast cancer, and it was uncontradicted that without the chemotherapy treatment she would have died within months.

There is a narrow "window of time during which the treatment [can] be rendered." *Dozsa v. Crum & Forster Ins. Co.*, 716 F.Supp. 131, 133 (D.N.J.1989). At the time of the hearing on the temporary restraining order, before plaintiff began the treatment at issue here, she faced nearly certain death, the ultimate irreparable injury. Today the specter of injury has improved in degree only, not in kind: plaintiff's health and future remain in serious doubt.

Absent injunctive relief, Blue Cross would refuse to pay not only for the treatments already administered but for any treatment tomorrow and in the near future because, it contends, it is all "related to" the bone marrow transplant, and the consequences discussed above would follow. Plaintiff clearly has established irreparable injury.

## VI

### *Possibility of Substantial Injury to Defendant*

By comparison, the injury to Blue Cross from the issuance of a preliminary injunction would be strictly financial. The estimated cost of the procedure at issue ranges from $75,000 to $100,000. Blue Cross is an insurance carrier which has surely anticipated such contingencies as are necessary when it must pay for services that it believed were excluded. The prospect of financial injury to Blue Cross in this instance cannot be deemed substantial.

## VII

### *Public Interest*

The parties have treated the public interest prong as if it were a debate on health care: The rising costs of health care and insurance premiums on the one hand, and the dramatic prevalence of breast cancer on the other. In fact, the public interest in this case rests on the more mundane issue of ERISA. The legislative choices with regard to health policy are not before the Court, but the legislative direction that created ERISA is squarely before it.

The public interest in this case is served by ensuring that the notice requirements of ERISA are complied with, that employers are enabled to make timely and informed choices regarding the benefits they provide their employees, and that insurance plans are interpreted fairly, free of conflict, and in a manner that preserves rather than removes coverage. The Court concludes that the public interest is served by a preliminary injunction.

An Order consistent with this Opinion is issued contemporaneously herewith.

### ORDER

Upon consideration of the motion for a preliminary injunction, the opposition thereto, the hearing held May 1, 1992, and the entire record herein, it is this 4th day of May, 1992, in accordance with the Opinion issued herewith

ORDERED that plaintiff's motion for a preliminary injunction be and it is hereby granted; and it is further

ORDERED that defendant be and it is hereby enjoined from notifying Johns Hopkins Hospital that plaintiff is not insured for High Dose Chemotherapy with Autologous Bone Marrow Transplant (HDCT-ABMT); and it is further

ORDERED that defendant be and it is hereby enjoined from denying coverage for treatment for plaintiff's current illness but shall reimburse John Hopkins Hospital for such treatment; and it is further

ORDERED that this Order shall be valid until final disposition of this case on the merits.