**Sharon PITMAN, Wife of Gale Pitman, Deceased, Plaintiff–Appellant,**

v.

**BLUE CROSS AND BLUE SHIELD OF OKLAHOMA, Individually and as Trade Name of Group Health Insurance of Oklahoma, Inc., Defendant–Appellee.**

No. 93–5026.

United States Court of Appeals, Tenth Circuit.

May 11, 1994.

**119**

Donald M. Bingham (Tom H. Gudgel with him on the briefs), Riggs, Abney, Neal & Turpen, Tulsa, OK, for defendant-appellee.

Before LOGAN and MOORE, Circuit Judges, and OWEN, District Judge.*

JOHN P. MOORE, Circuit Judge.

This appeal arises out of a dispute over the provisions of an employee welfare benefit plan and presents the problem of how a court must examine plan interpretations made by an administrator who is also the plan's insurer. The district court, applying recognized legal principles of review, granted summary judgment to the insurer. We conclude, however, the court erred by not considering the insurer's apparent conflict of interest in determining whether deference should be given to the insurer's interpretation of coverage. We affirm in part, reverse in part, and remand.

### A.

In August 1990, Gale Pitman, whose wife Sharon had subscribed to her employer's group medical insurance policy (the Policy) with Blue Cross and Blue Shield of Oklahoma (Blue Cross), was diagnosed with multiple myeloma.[1] Mr. Pitman, a beneficiary under the Policy, began a course of standard dose chemotherapy to treat the disease. Because chemotherapy is a "Covered Service" under the Policy, Blue Cross paid all the claims Mr. Pitman submitted for this initial treatment. In August 1991, however, after tests showed his cancer in remission, Mr. Pitman's treating physician recommended a more aggressive therapy consisting of high dose chemotherapy (HDC) accompanied by an autologous bone marrow transplant (ABMT)[2] to prolong the duration of remis-

Sandy S. McMath (Ronald W. Horgan, Tulsa, OK, with him on the briefs), Little Rock, AR, for plaintiff-appellant.

---

* Honorable Richard Owen, Senior United States District Judge for the Southern District of New York, sitting by designation.

1. In lay terms, multiple myeloma is a type of blood cancer present in the bone marrow. In medical terminology, it is "a malignant neoplasm of plasma cells usually arising in the bone marrow and manifested by skeletal destruction, pathologic fractures, and bone pain...." *Dorland's Illustrated Medical Dictionary* 859 (26th ed. 1985).

2. Because of its increasingly and ultimately toxic effect on the bone marrow, before HDC is commenced and while the patient is in remission, that is with no detectable plasmacytes, healthy bone marrow is harvested, frozen, and later reintroduced by transfusion into the patient's debilitated bone marrow upon completion of the HDC. The transplant is called autologous because the patient's own bone marrow is used. "The transplant itself apparently provides no treatment for the cancer. Rather, the cancer is treated by the

sion. The cost of this treatment exceeded $100,000.

In the meantime, on May 1, 1991, effective July 1, 1991, Blue Cross promulgated an Endorsement Respecting Human Organ and Tissue Transplant Services (the Amendment) in which it specifically excluded ABMT for the treatment of multiple myeloma.[3] On the basis of this exclusion, Blue Cross denied Mr. Pitman's request for preauthorization for HDC and ABMT on January 28, 1992.

In May 1992, Mr. Pitman filed suit under 29 U.S.C. § 1132(e)(1), alleging as a result of Blue Cross's breach of contract and implied covenant of good faith and fair dealing he "suffered extreme mental anguish and emotional distress" and was "placed in fear of losing his life," and "forced to make of himself a public spectacle begging funds from friends, neighbors, and total strangers in order to purchase the health care to which he is entitled under his contract with the Defendant...." Mr. Pitman sought a preliminary injunction to bar Blue Cross from denying his eligibility for treatment and a declaratory judgment the Policy remained in effect entitling him to "immediate certification for the benefit of bone marrow transplantation." Blue Cross moved for summary judgment.

Upon initial examination, the district court partially granted Blue Cross's motion on the ground Oklahoma's law of tortious breach of an insurance contract and an insurer's breach of fiduciary duty was not preserved by ERISA's savings clause, 29 U.S.C. § 514(b)(2)(A). Nevertheless, the district court found disputed material facts precluded summary judgment on Mr. Pitman's claim Blue Cross breached its fiduciary duty under ERISA. However, upon further briefing, the district court granted Blue Cross's motion to amend its order, relying on *Wilson v. Group Hospitalization & Medical Servs., Inc.,* 791 F.Supp. 309 (D.D.C.1992). The court held, unlike the circumstances in *Wilson,* in this case because neither the notice of Amendment nor the Amendment itself was ambiguous, no material facts remained in dispute to preclude summary judgment on whether Blue Cross breached its fiduciary duty to its insured. The court dismissed the action. Two months later, Mr. Pitman died although he had undergone the HDC/ABMT treatment.[4]

In this appeal, Sharon Pitman[5] contends the district court erred in granting summary judgment for Blue Cross without examining the inherent conflict of interest underlying its Amendment to the Policy. That conflict, she maintains, precipitated Blue Cross's breach of its medical insurance contract under Oklahoma law and its breach of fiduciary duty under ERISA.

## B.

In substance, we construe this suit under 29 U.S.C. § 1132(a)(1)(B)[6], the action direct-

---

high doses of chemicals introduced into the blood stream to kill the tumors." *Doe v. Group Hospitalization & Medical Servs.,* 3 F.3d 80, 87 (4th Cir.1993).

**3.** The Amendment states:

> B. BENEFITS
> 5) Preauthorization will be denied, *and Benefits will not be provided,* for any other allogeneic or syngeneic bone marrow transplants (with or without high doses of chemotherapy or radiation), such as:
> ....
> e) Multiple myeloma;
> ....
> 7) Preauthorization will be denied, *and Benefits will not be provided,* for autologous bone marrow transplants for any other cases, such as:
> ....
> e) Multiple myeloma.
> (italics in original).

**4.** In March 1992, when Mr. Pitman was in complete remission, his healthy bone marrow was harvested and later reinfused. The procedure was performed after Mr. Pitman's family and friends raised enough money through various fund-raising events to satisfy the hospital's threshold payment requirements.

**5.** While this action was pending, Gale Pitman, the named plaintiff, died without an estate, and we granted his wife's application for substitution, no other administrator or personal representative having been appointed.

**6.** 29 U.S.C. § 1132(a)(1)(B) states, in part:

> **§ 1132. Civil enforcement**
> **(a) Persons empowered to bring a civil action**
> A civil action may be brought—
> (1) by a participant or beneficiary—
> ....

ed principally at recovering benefits under the Policy.[7] The parties do not dispute the Policy is an employee benefit plan governed by ERISA. 29 U.S.C. § 1002(1). Instead, they differ on the extent to which ERISA resolves the present claims and the standard of review employed to evaluate the substantive issue.

■ Indeed, there are two standards of review required here. Our review of the district court's granting summary judgment is plenary, utilizing the same legal standards that circumscribed the district court. Repetition of that standard abounds. *See Applied Genetics Int'l, Inc. v. First Affiliated Secs., Inc.*, 912 F.2d 1238, 1241 (10th Cir.1990); *Osgood v. State Farm Mut. Auto. Ins. Co.*, 848 F.2d 141, 143 (10th Cir.1988); Fed. R.Civ.P. 56(c).

■ The Supreme Court has also circumscribed our review of the underlying substantive law. "[A] denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 956, 103 L.Ed.2d 80 (1989). "Of course, if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a 'facto[r] in determining whether there is an abuse of discretion.'" *Id.*

**C.**

■ Mrs. Pitman's first issue, that Oklahoma's law of tortious breach of contract governs Blue Cross's unilateral act of divesting by subsequent amendment already vested benefits, is illuminated by a spate of cases, *FMC Corp. v. Holliday*, 498 U.S. 52, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990); *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987); and *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985), each extending the reach of ERISA preemption, excising these state causes of action from its remedial scheme. Against this precedent, plaintiff has directed us to no exception to § 514(b), 29 U.S.C. 1144(b), the deemer clause, to place the claim of tortious breach of contract under the aegis of the savings clause, § 514(b)(2)(A), 29 U.S.C. § 1144(b)(2)(A), or to distinguish this case from the resolution in *Pilot Life*.

Moreover, Congress has distinguished between "employee pension benefit plans" and "employee welfare benefit plans," exempting the latter from much of ERISA's panoply of requirements including its vesting provisions. "Welfare benefits such as medical insurance . . . are not subject to the rather strict vesting, accrual, participation, and minimum funding requirements that ERISA imposes on pension plans." *Wise v. El Paso Natural Gas Co.*, 986 F.2d 929, 935 (5th Cir.1993); *see* 29 U.S.C. §§ 1051 and 1081. "[T]he employer may modify or withdraw these benefits at any time, provided the changes are made in compliance with ERISA and the terms of the

---

**(B)** to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

7. Mr. Pitman relied on 29 U.S.C. § 1109 for liability for breach of fiduciary duty. That section states, in part:

**§ 1109. Liability for breach of fiduciary duty**

(a) Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach. . . .

Although recovery inures to the plan, Mr. Pitman contends, in effect, just as the recovery of

funds in a pension plan would permit a later share in the distribution, in a health benefit plan, that money could be used to reimburse his claim. Although inartfully styled, the gist of Mr. Pitman's claim is for payment of benefits wrongfully denied by Blue Cross's breach of fiduciary duty. In *Leonhardt v. Holden Business Forms Co.*, 828 F.Supp. 657, 663 (D.Minn.1993), the court similarly construed plaintiff's request for injunctive relief to permit her to receive HDC/ABMT treatment substantively as a claim for benefits due, recognizing that any recovery for breach of fiduciary duty under § 1109 would make the employer and administrator liable to the group health plan, but only the plan liable for providing the coverage.

plan." *Doe v. Group Hospitalization & Medical Servs.*, 3 F.3d 80, 84 (4th Cir.1993).

Consequently, plaintiff can look neither to state law nor ERISA's own regulation of employee welfare benefit plans to support her contention Blue Cross cannot unilaterally divest "vested benefits" under the Policy. The district court, therefore, correctly granted summary judgment to Blue Cross on this issue.

## D.

■ In granting summary judgment on Mrs. Pitman's claim Blue Cross breached its fiduciary duty in denying benefits for her husband's HDC/ABMT treatment, the district court relied on *Wilson v. Group Hospitalization*, 791 F.Supp. 309. In *Wilson*, as here, the court evaluated plaintiff's claim for a preliminary injunction to enjoin her Blue Cross plan from refusing to pay for HDC/ABMT to treat her advanced breast cancer. As the court proceeded through the steps required for injunctive relief, it found the substance of the notice of a change of benefits to be unsatisfactory. That finding coupled with the presence of an "insurance carrier which both issues a policy and administers it" and whose "dual roles [ ] create an inherent conflict of interest," *id.* at 312, refocused the court's analysis of the merits of the denial of benefits. After balancing all of the interests involved, the *Wilson* court granted the preliminary injunction.[8]

In this case, the district court erred, however, by assuming *Wilson* stands for the proposition that finding the notice and amendment unambiguous ends the inquiry. The *decision* to amend the plan which underlies the denial of benefits must remain the focus of review, especially when a plan's administrator deemed the employee's fiduciary under ERISA is also the plan's insurer. The Eleventh Circuit has noted:

---

8. In fact, in that case, Blue Cross conceded it had changed the policy because too many adverse decisions undercut its continued definition of the HDC/ABMT treatment as experimental.

9. Mrs. Pitman notes, in its dual roles of managing the plan and deciding eligibility for benefits, Blue Cross is a fiduciary of the plan. 29 U.S.C. § 1002(21)(A) states, in part:

---

Because an insurance company pays out to beneficiaries from its own assets rather than the assets of a trust, its fiduciary role lies in perpetual conflict with its profit-making role as a business. That is, when an insurance company serves as ERISA fiduciary to a plan composed solely of a policy or contract issued by that company, it is exercising discretion over a situation for which it incurs "direct, immediate expense as a result of benefit determinations favorable to [p]lan participants."

*Brown v. Blue Cross & Blue Shield of Ala., Inc.*, 898 F.2d 1556, 1561 (11th Cir.1990) (citations omitted), *cert. denied*, 498 U.S. 1040, 111 S.Ct. 712, 112 L.Ed.2d 701 (1991).

Here, plaintiff alleged Blue Cross, acting as both the administrator and insurer of the plan,[9] denied benefits for a treatment that he claimed was the "exclusive endgame" of therapy for his illness after Blue Cross had specifically covered standard dose chemotherapy. In the face of this decision, Mrs. Pitman contends the burden shifted to Blue Cross "to explain the motive behind the endorsement, particularly since all recent cases have held that ABMT is not an experimental treatment."

The district court thus overlooked Blue Cross's burden under the *Firestone* analysis. Whether it framed the issue entirely around the unilateral amendment of the plan or only on the unambiguous language of the Amendment, we are left without a basis to review plaintiff's claim. We, therefore, offer the following guidance upon remand.

First, the Court noted in *Firestone*, "ERISA abounds with the language and terminology of trust law," 489 U.S. at 110, 109 S.Ct. at 954, and its legislative history repeatedly confirms "the Act's fiduciary responsibility provisions, 29 U.S.C. §§ 1101–1114, 'codif[y] and mak[e] applicable to

(21)(A) Except as otherwise provided in subparagraph (B), a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets . . . .

[ERISA] fiduciaries certain principles developed in the evolution of the law of trusts.'" *Id.* (citing H.R.Rep. No. 93–533, 93d Cong., 2d Sess.1974, *reprinted in* 1974 U.S.C.C.A.N. 4639, 4649). While these "[t]rust principles ·make a deferential standard of review appropriate when a trustee exercises discretionary powers," 489 U.S. at 111, 109 S.Ct. at 954, to the extent any discretionary authority or control is exercised, "one is a fiduciary." *Id.* at 113, 109 S.Ct. at 956. Nevertheless, if a trustee's interpretation is reasonable, it will not be disturbed. *Id.* at 111, 109 S.Ct. at 954.

*Firestone* acknowledged, however, these principles are not exclusive of a court's interpretation of the trust agreement aided by principles of contract law. *Firestone* instructs a court should not eschew the interpretation of the terms of the agreement itself which will likely resolve the validity of the claims in the first instance. To do otherwise ignores the goal of ERISA "to promote the interests of employees and their beneficiaries in employee benefit plans." *Id.* at 113, 109 S.Ct. at 956 (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 90, 103 S.Ct. 2890, 2896, 77 L.Ed.2d 490 (1983)).

Second, we would offer on remand the Fourth Circuit's application of *Firestone* and its amplification in *Doe v. Group Hospitalization.* In *Doe,* plaintiff, diagnosed with multiple myeloma, was denied benefits for HDC/ABMT treatment by an amendment to his Blue Cross plan. In reversing that part of the district court's order which held the plan administrator did not abuse its discretion in denying coverage, the Fourth Circuit utilized the *Firestone* analysis to decide the degree of deference which should be accorded the plan fiduciary's decision to deny benefits. The court agreed Blue Cross operated under a substantial conflict of interest.

In this case, Blue Cross insured the plan in exchange for the payment of a fixed premium, presumably based on actuarial data. Undoubtedly, its profit from the insurance contract depends on whether the claims allowed exceed the assumed risks. To the extent that Blue Cross has discretion to avoid paying claims, it thereby promotes the potential for its own profit.

That type of conflict *flows inherently from the nature of the relationship entered into by the parties and is common where employers contract with insurance companies to provide and administer health care benefits to employees through group insurance contracts.*

*Doe v. Group Hospitalization*, 3 F.3d at 86 (italics added).

Consequently, the Fourth Circuit altered its standard of review, holding:

[W]hen a fiduciary exercises discretion in interpreting a disputed term of the contract where one interpretation will further the financial interests of the fiduciary, we will not act as deferentially as would otherwise be appropriate. Rather, we will review the merits of the interpretation to determine whether it is consistent with an exercise of discretion by a fiduciary acting free of the interests that conflict with those of the beneficiaries. In short, the fiduciary decision will be entitled to some deference, but this deference will be lessened to the degree necessary to neutralize any untoward influence resulting from the conflict.

*Id.* at 87 (citations omitted); *see also Brown v. Blue Cross & Blue Shield of Ala., Inc.*, 898 F.2d at 1568 ("a fiduciary operating under a conflict of interest may be entitled to review by the arbitrary and capricious standard for its discretionary decisions as provided in the ERISA plan documents ... but the area of discretion to which deference is paid must be confined narrowly to decisions for which a conflicted fiduciary can demonstrate that it is operating exclusively in the interests of the plan participants and beneficiaries."); *Bass v. Prudential Ins. Co. of Am.*, 764 F.Supp. 1436, 1440 (D.Kan.1991).

█ In this case, the Policy authorizes the Blue Cross Board of Trustees "to determine and in its discretion, to alter the Benefits provided by this Contract or payment of dues therefor." Only a plan officer can change the Policy. Although the Policy excluded coverage for experimental or investigative services, it did not specify any particular services as experimental. The Policy was then changed by Amendment adopted "[t]o clarify the Plan's position ... [on] Benefits

for human organ or tissue transplant services which the Plan considers Experimental or Investigative."

The unamended Policy includes chemotherapy as a "Covered Service." The Amendment does not alter that benefit directly for the treatment of multiple myeloma but indirectly eliminates it in the higher doses present in HDC by denying coverage for the concomitant service of ABMT. Blue Cross's administrator, the plan officer, authorized the change, describing the services as experimental.[10] Under the *Firestone* standard of review, however, the decision to deny benefits is not entirely insulated by the administrator's discretion.

The record before us does not disclose the substantive basis upon which the district court dismissed plaintiff's claim Blue Cross breached its fiduciary duty when it denied preauthorization for treatment within the summary judgment context. That is, given the allegation Blue Cross breached its fiduciary duty, and supported by the treating physician's affidavit, HDC/ABMT is no longer considered experimental,[11] the district court failed to articulate a standard of review and address Blue Cross's decision to deny benefits. Without that analysis, the central issue remains unresolved. Summary judgment was, therefore, prematurely granted.

That gap is particularly troubling in the face of statements Blue Cross counsel made during oral argument representing not only that the insurer was not required to justify an exclusion, but also, in the worst case scenario, if an amendment became effective, could deny coverage for a service which had been covered when a beneficiary was hospitalized.[12] ERISA cannot be manipulated into a federal safe haven for medical insurers who fall within the ambit of employee welfare benefit plans.

### E.

We therefore **AFFIRM** the district court's order dismissing plaintiff's state action against Blue Cross and **REVERSE** its amended order granting summary judgment on Mrs. Pitman's claim Blue Cross as the plan's fiduciary breached its duty to its beneficiary.[13] We **REMAND** for further proceedings.

10. The Amendment sets out four criteria the plan "will use" to decide "if a service or supply is Experimental or Investigative." The listed criteria are:

  a. The supply or drug used must have received final approval to market by the U.S. Food and Drug Administration;

  b. There must be enough information in the peer reviewed medical and scientific literature to let the Plan judge the safety and efficacy of the services;

  c. The available scientific evidence must show the service has a good effect on health outcomes outside a research setting; and

  d. The service or supply must be as safe and effective outside a research setting as current diagnostic or therapeutic options.

It further states, "A service or supply will be considered Experimental or Investigative if *the Plan* determines that any one of the above criteria is not met." (italics added).

11. Indeed, the district court implicitly embraced Blue Cross's concession it could no longer consider HDC/ABMT experimental given the grow-

ing number of adverse decisions noted in *Wilson v. Group Hospitalization & Medical Servs., Inc.,* 791 F.Supp. 309, 311 (D.D.C.1992). In *Heasley v. Belden & Blake Corp.,* 2 F.3d 1249, 1263 n. 15 (3d Cir.1993), the court stated, "Since the Supreme Court decided *Firestone* in February 1989, we have found 24 published federal cases construing this exclusion [for experimental services]. This amount of litigation reveals the uncertainty caused by undefined experimental procedure exclusions for insurance consumers and litigants alike."

12. Asked whether Blue Cross could exclude casting a fracture as the end stage treatment if such a provision became effective just as a claimant sought the service, Blue Cross answered that employers could purchase more expensive coverage that included the vesting of benefits.

13. Blue Cross's characterization of the issue on appeal as "whether unilateral amendment of an employee welfare benefit plan is a fiduciary function, or implicates fiduciary duties, under ERISA," of course, begs the question.