UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

SHARON PITMAN, wife of Gail
Pitman, Deceased,

      Plaintiff-Appellee,

v.

BLUE CROSS AND BLUE SHIELD
OF OKLAHOMA, individually and as
Trade Name of GROUP HEALTH
INSURANCE OF OKLAHOMA, INC.,

      Defendant-Appellant.

Nos. 98-5034 & 99-5197
(D.C. No. 92-CV-451-E)
(N.D. Okla.)

ORDER
Filed July 7, 2000

Before **BALDOCK**, **PORFILIO**, and **EBEL**, Circuit Judges.

This matter is before the court on appellant's petition for rehearing filed
June 5, 2000. The petition for rehearing is granted for the sole purpose of
deleting footnote eight. The petition is denied in all other respects. A revised
opinion is attached to this order.

                        ENTERED FOR THE COURT
                        Patrick Fisher, Clerk

                    By:

                        Keith Nelson
                        Deputy Clerk

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

SHARON PITMAN, wife of Gail
Pitman, Deceased,

      Plaintiff-Appellee,

v.

BLUE CROSS AND BLUE SHIELD
OF OKLAHOMA, individually and as
Trade Name of GROUP HEALTH
INSURANCE OF OKLAHOMA, INC.,

      Defendant-Appellant.

Nos. 98-5034 & 99-5197

**Appeal from the United States District Court**
**for the Northern District of Oklahoma**
**(D.C. No. 92-CV-451-E)**

Submitted on the briefs:[*]

Donald M. Bingham and Karen E. Langdon of Riggs, Abney, Neal, Turpen,
Orbison & Lewis, Tulsa, Oklahoma, and Mark E. Schmidtke, of Ebenstein &
Schmidtke Consultants, Valparaiso, Indiana, for Defendant-Appellant.

Sandy S. McMath of Sandy S. McMath & Associates, P.A., Little Rock, Arkansas,
for Plaintiff-Appellee.

---

    [*]After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of this
appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The cause therefore is
ordered submitted without oral argument.

Before **BALDOCK**, **PORFILIO**, and **EBEL**, Circuit Judges.

**EBEL**, Circuit Judge.

This appeal arises out of a dispute over the provisions of an employee welfare benefits plan. Insurer Blue Cross & Blue Shield of Oklahoma ("Blue Cross") appeals the district court's grant of summary judgment in favor of one of its policyholders, Gail Pitman. Pitman claims that Blue Cross, as both the insurer and administrator of a health benefits plan, breached its duty under the plan to pay for high-dose chemotherapy with autologous bone marrow transplant, ("HDC/ABMT"), a procedure used to treat a form of cancer, multiple myeloma. Blue Cross contends that it has no obligation to pay for the procedure because the treatment is excluded under an amendment to Pitman's policy. We hold that Blue Cross operated under a conflict of interest; that the policy unambiguously excluded the autologous bone marrow transplant; and that Blue Cross did not carry its burden of demonstrating that high-dose chemotherapy fell within an exclusionary clause. We exercise jurisdiction under 28 U.S.C. § 1291 and affirm in part and reverse in part.

## BACKGROUND

The parties and this controversy were before the Court in a prior appeal, and the facts are set out fully in the resulting opinion. See Pitman v. Blue Cross & Blue Shield of Oklahoma, 24 F.3d 118 (10th Cir. 1994) ("Pitman I"). We include, therefore, only those facts necessary to resolve the current appeal.

Gail Pitman, a beneficiary under a medical insurance plan that Blue Cross both administers and insures, was diagnosed with multiple myeloma in August 1990. To treat the disease, Mr. Pitman began a course of standard-dose chemotherapy, the cost of which was covered under the Blue Cross plan. The plan explicitly lists chemotherapy as a covered service. In August 1991, after tests revealed that the cancer was in remission, Mr. Pitman's doctor recommended a treatment of high dose chemotherapy and autologous bone marrow transplant ("HDC/ABMT"). On January 28, 1992, Mr. Pitman telephoned Barbara Johnson, a benefits-verification representative for Blue Cross, to inquire about coverage under the plan for HDC/ABMT. Ms. Johnson denied coverage on the basis of a plan amendment which became effective on July 1, 1991.[1] The amendment provides:

---

[1] Barbara Johnson testified that when she denied Pitman's request for benefits she did not have any knowledge of whether the employer sponsoring Pitman's plan was self-funded or was indemnified by Blue Cross. In addition, she claims that although she thought HDC/ABMT was "probably . . . more than $10,000" she did not know how expensive it would be.

6) Preauthorization will be considered for an autologous bone marrow transplant (in which the patient is the donor), with high-dose chemotherapy or radiation, only for the following conditions:

a) Stage III or IV Hodgkin's disease which has come back after an initial complete remission, with no bone marrow involvement;

b) Stage III or IV intermediate or high-grade non-Hodgkin's lymphoma which has come back after an initial complete remission, with no bone marrow involvement;

c) Stage III or IV neuroblastoma, without bone marrow involvement;

d) Acute lymphocytic or non-lymphocytic leukemia which has come back after an initial complete remission.

7) Preauthorization will be denied, *and Benefits will not be provided*, for autologous bone marrow transplants for any other cases, such as:

. . .

e) multiple myeloma

(italics in original). After being denied coverage, Pitman filed suit in the district court in May 1992 under 29 U.S.C. § 1132(e)(1), seeking a preliminary injunction to bar Blue Cross from denying the HDC/ABMT treatment and a declaratory judgment that the policy entitled him to "immediate certification for the benefit of bone marrow transplantation." The district court granted summary judgment in favor of Blue Cross. Pitman appealed that decision to this Court. After construing the suit as one falling under 29 U.S.C. § 1132(a)(1)(B),[2] we reversed and remanded for further proceedings.[3] See Pitman I, 24 F.3d at 119.

---

[2] Section 1132(a)(1)(B) states: "A civil action may be brought–by a participant or beneficiary–to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

[3] In March 1992, Pitman was able to undergo HDC/ABMT due to the generosity of his friends and neighbors. However, while the appeal in his case

(continued...)

Specifically, this Court determined that the district court "erred by not considering the insurer's apparent conflict of interest in determining whether deference should be given to the insurer's interpretation of coverage." Id.

On remand, the district court heard further evidence presented by both parties. On March 1, 1995, the district court granted summary judgment in favor of Pitman. Following Blue Cross' motion to reconsider the March 1995 order, the court held an evidentiary hearing on August 10, 1995. At this hearing, Blue Cross presented evidence to the court that it is a "not-for-profit mutual company owned by the members who participate in the company." In addition, Blue Cross testified that the Oklahoma Insurance Commission requires Blue Cross to keep a minimum amount of reserves, which approximates two months of claims expense and administrative expense. Furthermore, when premiums are received from its members, those dollars are first applied to the payment of claims and then to overhead, which is also regulated by the Oklahoma Insurance Commission. If there is a shortfall, then the company dips into the reserves; if there is a surplus, that money goes into the reserves account. If for some reason the income greatly exceeds the outflow, the company would be required to lower its rates or increase the benefits to the members. If the company had large surpluses one year, it

[3](...continued)
was pending, Pitman died. This court granted his wife's application for substitution.

would not be able to pay big bonuses to its executives because the Department of Insurance regulates administrative expenses and requires any excess to go into a reserves account.

On October 11, 1996 the district court entered findings of fact and conclusions of law, concluding that Blue Cross had a conflict of interest, and that it had denied the requested benefits arbitrarily and capriciously. Consequently, the court found that the amendment to the plan that excluded a bone marrow transplant for multiple myeloma was void. Blue Cross now appeals that decision and the attorney's fee award granted to Pitman by the district court in an August 1999 order.

## DISCUSSION

I. Standard of Review

Summary judgment orders are reviewed de novo, using the same standards as applied by the district court. See Kimber v. Thiokol Corp., 196 F.3d 1092, 1097 (10th Cir. 1999). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Jones v. Kodak Med. Assistance Plan, 169 F.3d 1287, 1291 (10th Cir. 1999).

In addition to the standards we use to evaluate the district court's order, we must also address the appropriate standard with which the court should review Blue Cross's denial of benefits under the ERISA plan it administers. See Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 108-15 (1989). "Although ERISA gives a plan beneficiary the right to judicial review of benefit denials, the statute did not establish the standard of review for such decisions." Chambers v. Family Health Plan Corp., 100 F.3d 818, 824-25 (10th Cir. 1996). In Firestone, the Supreme Court held that "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone, 489 U.S. at 115.

In this case, the plan states that "[t]he Board of Trustees of Blue Cross and Blue Shield of Oklahoma is authorized to determine, and in its discretion, to alter the Benefits provided by this Contract." Thus, the plan expressly gives Blue Cross as plan administrator the discretion to determine whether to deny a claimant insurance benefits under the plan. Therefore, because the plan grants Blue Cross discretion, "[a] court reviewing a challenge to a denial of employee benefits . . . applies an 'arbitrary and capricious' standard to a plan administrator's actions." Charter Canyon Treatment Ctr. v. Pool Co., 153 F.3d 1132, 1135 (10th Cir. 1998).

However, if a plan administrator is operating under a conflict of interest,

- 7 -

"the court may weigh that conflict as a factor in determining whether the plan administrator's actions were arbitrary and capricious." Id. "[T]he Tenth Circuit has adopted a sliding scale, decreasing the level of deference in proportion to the severity of the conflict." Jones, 169 F.3d at 1291. The conflict, then, is weighed as one factor in determining whether the plan administrator's decision was arbitrary and capricious. See Firestone, 489 U.S. at 115; Jones, 169 F.3d at 1291.

Pitman contends that Blue Cross was operating under a conflict of interest because it was both the plan administrator and the insurer. Blue Cross, however, asserts that there was no conflict of interest simply because it was both the insurer and the administrator, and even if such a conflict did exist, it did not impact the decision of the Customer Claims Representative, Barbara Johnson. Thus, it contends no decrease in the level of deference is necessary. We agree with the district court that Blue Cross operated under a conflict of interest.

In deciding whether a conflict of interest existed, this court should consider various, non-exhaustive factors including whether:

> (1) the plan is self-funded; (2) the company funding the plan
> appointed and compensated the plan administrator; (3) the plan
> administrator's performance reviews or level of compensation were
> linked to the denial of benefits; and (4) the provision of benefits had
> a significant economic impact on the company administering the
> plan.

Jones, 169 F.3d at 1291; see also Kimber, 196 F.3d at 1098. Although this plan is not self-funded, Blue Cross is both the insurer and the administrator of the plan.

As one court has noted, "when an insurance company serves as ERISA fiduciary to a plan composed solely of a policy or contract issued by that company, it is exercising discretion over a situation for which it incurs direct, immediate expense as a result of benefit determinations favorable to plan participants." Brown v. Blue Cross & Blue Shield of Alabama, Inc., 898 F.2d 1556, 1561 (11th Cir. 1990) (internal quotations and alteration omitted); see also Doe v. Group Hospitalization & Med. Servs., 3 F.3d 80, 86 (4th Cir. 1993). Blue Cross points out that it is a non-profit corporation, and, therefore, argues that it has no motivation to deny claims in order to increase its profits. Moreover, it contends that if there was ever a period where income vastly exceeded outgo, Blue Cross would be required to lower its premiums or increase its benefits. Although Blue Cross may be non-profit, it still has a financial interest in denying claims in order to remain economically viable as well as competitive within the insurance industry. See Lee v. Blue Cross/Blue Shield of Alabama, 10 F.3d 1547, 1552 (11th Cir. 1994) (finding that a lack of profit motive is not dispositive of a self-interest dispute because "[e]ven without a profit motive, Blue Cross' desire to maintain competitive rates while providing optimum benefits would require it to reject marginal claims"). Moreover, the corporate officers have incentives to maintain an economically healthy and successful company in order to ensure the viability and competitiveness of the company for the sake of their own job

stability. Thus, we find that there is a conflict of interest in this case.[4] But see

Farley v. Arkansas Blue Cross & Blue Shield, 147 F.3d 774, 777 n.5 (8th Cir.

1998) (finding no "palpable" conflict of interest even though Blue Cross was both

the administrator and insurer of a plan when it is a non-profit corporation).

Under the sliding scale approach adopted by the Tenth Circuit, we decrease

the level of deference owed in proportion to the severity of the conflict. Jones,

---

[4] We recognize that this court recently addressed a similar issue in Kimber v. Thiokol Corp., 196 F.3d 1092 (10th Cir. 1999). In Kimber, this court determined that there was no conflict of interest in a self-funded plan in which an employee of the company administered the plan because the administrator/employee was not a corporate officer, held no stock in the company, and had no direct pecuniary interest in the conflict. Id. at 1098. Blue Cross argues likewise that there is no conflict in this case because its claim adjuster, Ms. Johnson, simply applied the amendment excluding autologous bone marrow transplant for multiple myeloma without any knowledge of the nature of the funding of Pitman's plan–i.e., whether Blue Cross indemnified or insured the plan. We find that this case is distinguishable from Kimber. First, in Kimber, the decisions of the plan administrator were reviewed and advised by John Hancock Managed Care Group, which presumably did not have a financial conflict of interest. Second, the transcript of the conversation between Mr. Pitman and Ms. Johnson indicates she placed Mr. Pitman on hold at least twice, and Ms. Johnson's deposition testimony suggests she may have talked to management during this time for advice. More importantly, unlike the self-funded company in Kimber where the company's profit is not derived solely from its administration of the health benefits plan, Blue Cross is in the business of insurance. Thus, it can only remain economically viable through its insurance transactions. By contrast, self-funded companies typically have other means of generating profit and income. Thus, in Blue Cross' situation, as both insurer and administrator of the plan, there is an inherent conflict of interest between its discretion in paying claims and its need to stay financially sound.

169 F.3d at 1291.[5]  Thus, "[w]here the plan administrator operates under a conflict of interest . . . the court may weigh that conflict as a factor in determining whether the plan administrator's actions were arbitrary and capricious."  Charter Canyon, 153 F.3d at 1135.

## II. The Amendment

Pitman next contends that although Blue Cross had the right to amend the health plan, Blue Cross' use of the amendment[6] to deny Pitman benefits was in

---

[5] The district court applied the "presumptively void" test after concluding that Blue Cross operated under a conflict of interest.  Under this test, the decision of an administrator is presumed to be void unless the administrator can prove: "(1) under de novo review, the result reached was nevertheless 'right' or (2) the decision was not made to serve the administrator's conflicting interest."  Chambers v. Family Health Plan Corp., 100 F.3d 818 (10th Cir. 1996).  This court rejected the presumptively void test in favor of the sliding scale test in Chambers, 100 F.3d at 826-27.  Thus, as discussed above, this court will treat the conflict as one factor in determining whether an abuse of discretion occurred.

[6] Blue Cross spends a significant portion of its brief arguing that it had the right to amend the plan under ERISA.      This is a correct statement of the law, (     see Averhart v. US West Mgmt. Pension Plan    , 46 F.3d 1480, 1488 (10th Cir. 1994) ("An employer can wear two hats: one as a fiduciary administering a pension plan and the other as the drafter of the plan's terms.  Therefore, because the functions are distinct, an employer does not act as a fiduciary when it amends or otherwise sets the terms of a plan") (quotations omitted) (citation omitted)), and Pitman conceded as much in his brief.  Pitman, however, seems to argue that         the application of the amendment to deny him benefits was arbitrary and capricious, because he was already receiving chemotherapy under the plan at the time the amendment was passed.  This argument fails, however, because, as this Court recognized in Member Servs. Life Ins. Co. v. American Nat'l Bank & Trust Co., 130 F.3d 950 (10th Cir. 1997), welfare benefit plans are "exempt from the

(continued...)

- 11 -

violation of its fiduciary duties because it acted under a conflict of interest.

Pitman further argues the district court correctly found that the language of the amendment did not clearly exclude HDC/ABMT. Therefore, Pitman argues, the court was correct in refusing to read the amendment to exclude HDC/ABMT because coverage for chemotherapy is explicitly granted elsewhere in the plan.

Blue Cross, in response, argues that even under the less deferential standard applied when there is a conflict of interest, its decision to deny benefits was not arbitrary and capricious because the amendment unambiguously excludes

---

[6](...continued)
statutory vesting requirements that ERISA imposes on pension benefits. Accordingly, an employer may amend the terms of a welfare benefit plan or terminate it entirely." Id. at 954 (internal quotation omitted). This Court went on, however, to state that "benefits under a welfare benefit plan may vest under the terms of the plan itself." Id. (internal quotation omitted). To determine whether the benefits have vested, it is necessary to apply contract principles. See id. According to Member Servs., "coverage under a medical insurance policy or plan is normally triggered by one of two events. If a policy insures against illness, coverage for all medical costs arising from a particular illness vests when the illness occurs. If a policy insures against expenses, coverage vests when the expenses are incurred." Id. (internal quotation omitted); see also 10 Couch on Insurance 3d § 144:99 (1998) (distinguishing between medical insurance policies that insure against illness and policies that insure against expenses to determine whether coverage has vested). The Plan under which Pitman was covered insures against expenses. The plan states: "a Subscriber is entitled to Benefits for Covered Services in the amounts specified in this Schedule of Benefits *when the covered Services are rendered* by a Participating Provider." In addition, the plan defines a benefit period as "the specified period of time during which charges for Covered Services must be Incurred in order to be eligible for payment by the plan. A charge shall be considered Incurred on the date the service or supply was provided to a Subscriber." Thus Pitman has no claim that his right to HDC/ABMT had vested.

autologous bone marrow transplants with high dose chemotherapy for multiple

myeloma.[7]  Moreover, the amendment was in effect when Mr. Pitman requested

authorization for the treatment.   In assessing whether the amendment is

ambiguous:

> "We are mindful that the objective in construing a health care agreement, as with general contract terms, is to ascertain and carry out the true intention of the parties.  However, we do so giving the language its common and ordinary meaning *as a reasonable person in the position of the [plan] participant*, not the actual participant, would have understood the words to mean."

Blair v. Metropolitan Life Ins. Co., 974 F.2d 1219, 1221 (10th Cir. 1992) (quoting

McGee v. Equicor-Equitable HCA Corp., 953 F.3d 1192, 1202 (10th Cir. 1992)).

Autologous bone marrow transplant is expressly excluded as a covered

service in the plan and nowhere in the plan is it included as a covered service.

The relevant language of the amendment is contained in paragraphs six and seven

under the heading "Benefits".  Paragraph six states: "Preauthorization will be

considered for an autologous bone marrow transplant (in which the patient is the

---

[7] Blue Cross argues that in the original summary judgment entered prior to Pitman I, the district court expressly found that the amendment was unambiguous, and this court in Pitman I never overturned this ruling.  In Pitman I, this court did not review the findings of the district court, nor did we make an ultimate determination as to the correctness of the district court findings.  Instead, we remanded the case so that the district court could determine whether a conflict of interest existed and what standard of review should be applied in this case.  See Pitman I, 24 F.3d at 119.  Thus, this court has never made any binding determination on the ambiguity of the amendment.

donor), with high-dose chemotherapy or radiation, only for the following conditions: [multiple myeloma is not listed]." Paragraph seven states: "Preauthorization will be denied, *and Benefits will not be provided*, for autologous bone marrow transplants for any other cases, such as: . . . e) multiple myeloma." Contrary to the district court findings, we conclude that this language unambiguously excludes autologous bone marrow transplants.

However, we find that high dose chemotherapy is not excluded under the plan. A basic rule of insurance law provides that the insured has the burden of showing that a covered loss has occurred, while the insurer has the burden of showing that a loss falls within an exclusionary clause of the policy. See McGee, 953 F.2d at 1205; Blair, 974 F.2d at 1221; Jenkins v. Montgomery Indus. Inc., 77 F.3d 740, 743 (4th Cir. 1996); Fehring v. Universal Fidelity Life Ins. Co., 721 P.2d 796, 799 (Okla. 1986) (holding that insurer failed to sustain burden of proving loss came within scope of exclusionary clause). Blue Cross has failed to sustain its burden of showing that high-dose chemotherapy fell under any exclusion in the plan.

Chemotherapy is expressly included as a covered service under the listing of benefits under the plan. Given this explicit inclusion of chemotherapy as a general covered service, it would take a very clear exclusion of a particular application of chemotherapy to remove that application as a covered service.

Paragraph seven listed under the heading "Benefits" in the amendment excludes only autologous bone marrow transplants. Nowhere in that paragraph is the associated high-dose chemotherapy excluded from coverage. Paragraph six includes autologous bone marrow transplants with high-dose chemotherapy but only for certain conditions not present here. Nevertheless, because paragraph six is an inclusive paragraph rather than an exclusive one, and because the reference to high-dose chemotherapy in paragraph six could be viewed as definitional language defining when autologous bone marrow transplant services will be covered, this language does not narrow the explicit inclusion of chemotherapy elsewhere in the policy. Blue Cross has thus failed to carry its burden of showing that the high-dose chemotherapy fell within an exclusionary clause of the plan.

We therefore hold that Blue Cross was arbitrary and capricious in denying coverage for the high-dose chemotherapy portion of Pitman's procedure. This is particularly true because "Blue Cross' discretionary interpretation to the contrary is not entitled to the deference we might otherwise accord," Doe, 3 F.3d at 89, for the reasons given in Part I above. However, the policy unambiguously excluded the autologous bone marrow transplant, and thus Blue Cross correctly declined to pay the costs associated with that portion of the procedure. We therefore affirm in part and reverse in part.

III. Attorney Fees

The district court awarded Pitman $64,500 in attorney's fees under 29 U.S.C. § 1132(g)(1). The statute provides in pertinent part that "[i]n any action under this subchapter . . . by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). Under this section, "it is within the district court's sound discretion to determine whether a party is entitled to attorney's fees as the result of an action brought under ERISA." Gordon v. United States Steel Corp., 724 F.2d 106, 108 (10th Cir. 1983). Although the district court has already addressed this issue once and determined that Pitman was entitled to attorney's fees, we believe it is necessary to remand the issue to the district court and have it review again the appropriateness of awarding attorney's fees to Pitman in light of our decision to reverse in part and affirm in part. In remanding we do not mean to imply that an award of attorney's fees would be an abuse of discretion where a plaintiff only partially prevails on her claim. See Gordon, 724 F.2d at 109 (listing the five factors a district court should consider in determining whether to award attorney's fees under section 1132(g)(1) and implicitly recognizing that the relative merits alone is not dispositive of the issue). However, because the situation has changed since the district court last addressed the issue, and it is within the district court's discretion whether to award attorney's fees, we remand.

- 16 -

We therefore AFFIRM in part, REVERSE in part, and REMAND for consideration of attorney's fees under 29 U.S.C. § 1132(g)(1).