Edward TOCKER, Plaintiff–Appellant,

v.

PHILIP MORRIS COMPANIES, INC., also known as Altria Group, Inc., Kraft Foods Inc., and General Foods Corp., Defendants–Appellees.

No. 04–5904–CV.

United States Court of Appeals, Second Circuit.

Argued: Dec. 2, 2005.

Decided: Nov. 22, 2006.

William D. Frumkin, White Plains, NY, (Kathryn E. White, Sapir & Frumkin, LLP, White Plains, New York, of counsel), for Plaintiff–Appellant.

Michael J. Dimattia, New York, NY, (McGuire Woods LLP, New York, New York, of counsel), for Defendants–Appellees.

Before CARDAMONE, LEVAL, and SACK, Circuit Judges.

CARDAMONE, Circuit Judge.

Plaintiff Edward Tocker (plaintiff or appellant) had been employed as a tax attorney for defendant General Foods[1] for many years. When he learned in 1989 he was suffering from a serious, life-threatening illness, he discussed his circumstances with his employer's benefits administration manager. As a result, the benefits administration created a special package of benefits for him in 1990, which plaintiff accepted. In January 2002, 13 years later, Tocker, despite the doctor's prognosis, was still alive and applied for a pension benefit based on 34 years and four months of credit, from September 1967 until December 31, 2001, when he turned 65 years old. General Foods' benefits administration responded that under the 1990 special package and agreement, Tocker was eligible for service credit only for the 22 years and six months from September 1967 until March 1, 1990, because of a severance agreement he had signed as part of the benefits package. Plaintiff claimed he had not been told in 1990 that he was being terminated and would therefore be ineligible for pension benefits. He appealed the benefit administration's determination, and requested a review of his pension compu-

tation. The Kraft administrative committee upheld the denial of pension credit.

Tocker then filed suit *pro se* in the United States District Court for the Southern District of New York (Robinson, J.) against Kraft's parent company (Philip Morris Companies, Inc. a/k/a Altria Group, Inc.), Kraft Foods Inc., and General Foods Corp. (collectively defendants), alleging violations of the Employee Retirement Income Security Act of 1974 (ERISA), 88 Stat. 829, as amended[2], 29 U.S.C. § 1001 *et seq.* Although proceeding *pro se* in the district court, Tocker is now represented by counsel on this appeal. Giving deference to the administrative committee's finding that Tocker was terminated in March 1990, and to its interpretation of the General Foods Retirement Plan for U.S. Salaried Employees (General Foods Plan or Plan), the trial court granted defendants' motion for summary judgment.

Plaintiff appeals from the grant of summary judgment for defendants and from the denial of his motion to amend his complaint to add necessary parties dated September 30, 2004. The law has put in place a procedure to filter claims under ERISA. Where the administrators are given discretion under the terms of a benefit plan, as they are in this case, the gate to success on a claim is not the applicant's to open. Rather, the administrator's decision on a claim will be upheld if reason-

---

1. We briefly note the recent corporate name changes of General Foods Corp., which in March 1989 merged with Kraft Inc. and became Kraft General Foods, Inc. The company name was later simplified to Kraft Foods Inc. in 1995, and to Kraft Foods North America, Inc. in 2001. Meanwhile, in 1991 the General Foods Plan merged into the Kraft Retirement Plan. The plan is now administered by Kraft Foods North America, Inc. Administrative Committee. The merger and the name changes are irrelevant to the issues in this case. We refer throughout this opinion to the company as General Foods and to the plan as the General Foods Plan. We refer to the ad-

ministrative committee as the Kraft Administrative Committee or simply the administrative committee.

2. Congress recently passed the Pension Protection Act of 2006, Pub.L. No. 109–280 (2006), which significantly amends the ERISA statute. The new provisions appear to be inapplicable to the issues we address today and, in any case, we need not reach them. We refer throughout the opinion to the statute as codified prior to the enactment of the Pension Protection Act.

able, and only overturned if found to be arbitrary. There lies the test we apply here.

## BACKGROUND

### A. *Tocker's History with General Foods and the General Foods Plan*

Plaintiff Tocker began his employment with General Foods as a tax analyst on September 11, 1967. A tax attorney and certified public accountant by training, he earned praise from his supervisors for making substantial contributions to the business, and eventually attained the position of assistant tax director for General Foods.

As a salaried employee, plaintiff participated in the General Foods Plan, a retirement and pension plan. The General Foods benefits program also included plans for general disability, long-term disability benefits, medical benefits, dental benefits, life insurance, employee thrift investment, vacation, and mortality payments. The General Foods Plan was a separate legal entity from its sponsoring employer, General Foods. Its successor, the Kraft Plan, continues to be a separate entity from the employer corporations, Kraft Foods North America, Inc., and Philip Morris Companies, Inc., now Altria Group, Inc. The plan was administered by an appointed administrative committee consisting of five to seven General Foods employees, and by its terms reserved discretion to the administrative committee to make conclusive determinations and interpretations on all questions arising under the plan.

The employer distributed a summary plan description (SPD) to all its employees as required by ERISA, 29 U.S.C. § 1021(a)(1). The SPD included information with regard to each of the various plans, including the retirement plan, that constituted the General Foods benefits program. Although the SPD was silent with respect to what discretion was granted the pension board and the administrative committee, it did state

> The governing documents in all cases will be the insurance contracts, the official texts of the plans and the trust agreements, whichever are applicable. While it is the intent of General Foods to continue the benefits described in this book, the right to change, modify or discontinue them, without notice, is reserved to the extent permitted by law.

### B. *Tocker's Diagnosis and Benefit Arrangement*

In January 1989 Tocker was diagnosed with a malignant brain tumor and underwent radiation and chemotherapy treatments. His doctors told him he had six to 18 months to live. Tocker disclosed his condition and discussed his benefits options with his supervisor, Edward Bloom, and the General Foods benefits administration manager, Robert D. Varone. In the normal course, Tocker would have had two options: (1) continue his employment with General Foods and be placed on long-term disability, which would provide him with 60 percent of his base salary each month while he remained disabled, or (2) terminate, through the workforce reduction program, his employment with General Foods and receive an immediate lump-sum payment totaling 22 months pay plus payment for unused vacation time. Typically these two options—long-term disability and workforce reduction lump-sum payments—were mutually exclusive. Long-term disability employees were not eligible for the kind of lump-sum payments available under the workforce reduction program, and terminated employees receiving lump-sum payments through the workforce reduction program were not eligible for long-term disability.

Plaintiff's supervisor, Edward Bloom, wrote an unsolicited letter to managers at General Foods on Tocker's behalf, praising Tocker's contributions to the corporation over the years, explaining that he was having a difficult time choosing between the two options of either long-term disability or a lump-sum payment, and urging the corporation and the administrative committee to do something to help him. General Foods responded by presenting Tocker with a new choice, the just referred to special benefits package—one not typically available—by which Tocker could receive a lump-sum bonus payment through the workforce reduction program, effective March 1, 1990, and thereafter receive long-term disability benefits as well.

Robert Varone outlined the terms of the benefits arrangement for Tocker in a letter dated February 27, 1990 and in a revised and finalized copy of the letter dated March 14, 1990. These letters detailed the actions to be taken with respect to Tocker's benefits. The letters stated: "You will be put on medical leave effective 1/29/90 through 2/27/90. You will report to work 2/28/90 and be terminated with Workforce Reduction . . . 3/1/90." Varone explained the benefits due to Tocker as follows:

BENEFITS

1. *Retiree* . . . Retiree medical will be in effect beginning 3/1/90 at a monthly cost of $13. . . .

2. *Active* . . . All other active benefits will terminate 3/1/90.

3. *Life Insurance—Conversion* . . . You have completed a preliminary term insurance application requesting conversion of $232,000 life insurance cancelling as a result of your termination.

4. *Retirement* . . . You have elected a 10–year certain option to begin at age 55 (1/1/92). The amounts you will receive

from the qualified and APA (non-qualified) plan each month are indicated below.

Tocker agreed to this arrangement, signing a number of documents in early 1990 in which he elected benefits consistent with those outlined in Varone's March 14 letter. These documents indicated that plaintiff was being terminated effective March 1, 1990. He signed a workforce reduction program election of separation options form, in which he elected "lump sum in full" and agreed "that this election of separation option is irrevocable." He signed also a retirement/termination election form that stated: "My employment having been terminated, I hereby make the following election." When filling out a conversion of group term life insurance form that asked the date his employment ended, Tocker responded: "Month *3* Day *1* Year *90.*" Tocker never worked after that date. According to plaintiff, even though he signed the forms indicating he was terminated, he did not believe he was actually being terminated. Tocker had not been previously identified as a candidate for workforce termination and his supervisor in the tax department was not notified that he was terminated on March 1, 1990.

After receiving an immediate lump-sum payment of $212,666.74, Tocker continued to receive long-term disability benefits (a benefit ordinarily available only to employees) until he turned 65 years old on December 31, 2001. He then contacted the Kraft (as General Foods was then known) benefits department to request a calculation of his pension benefits. The department sent Tocker a letter dated May 2, 2002, informing him that he would receive pension credit only for the years from September 1967 until March 1990, and not for the years after March 1990. Plaintiff appealed the benefit department's determination and requested review of his pen-

sion computation, arguing that he was entitled to additional service credit from March 1990 to January 2002. By letter dated September 17, 2002, the administrative committee upheld the denial of pension credit for the years after March 1990.

### C. *Procedural History*

Bringing suit under 29 U.S.C. § 1132, Tocker filed his *pro se* complaint in the Southern District against defendants Philip Morris Companies, Inc., Kraft Foods Inc., and General Foods Corp., alleging that the administrative committee's denial of pension credit for the 12 years from 1990 until 2002 violated ERISA, 29 U.S.C. § 1001, *et seq.* Defendants moved for summary judgment, and Tocker moved to amend his complaint to add as defendants the General Foods Plan and the administrative committee.

Tocker maintained that the administrative committee had miscalculated his years of credited service because according to the SPA an employee would continue to receive credit toward his pension while receiving long-term disability benefits. Defendants countered that Tocker's receipt of long-term disability benefits had been exceptional, that the special benefits had been provided for humanitarian reasons, and that the administrative committee had acted reasonably in denying Tocker pension credits for the years after March 1990 because Tocker had been terminated with a lump-sum payment effective March 1, 1990.

The district court determined that the Kraft plan had reserved discretion to the administrative committee to make benefit decisions, and so the court utilized an arbitrary and capricious standard to review the administrative committee's denial of benefits. It noted that Tocker was not without evidence supporting his claim for pension benefits. The court also found that the administrative committee's determination was reasonable. Given a district court's limited scope of review of the committee's decision, the trial court found that summary judgment for the defendants was proper and therefore granted that relief to them. In addition, the district court denied plaintiff's motion to amend the complaint, reasoning that the amended complaint would not survive summary judgment and that such an amendment would be futile. It is from this judgment that plaintiff appeals.

The principal question before us is whether the district court properly applied an arbitrary and capricious standard instead of a *de novo* standard in reviewing the administrative committee's denial determination. Tocker contends that the wrong standard was utilized because even though the General Foods Plan reserved discretionary review to the administrative committee, the SPD distributed to General Foods employees did not mention the administration's discretion afforded to the committee, and ERISA requires that an SPD be sufficiently comprehensive to apprise participants of their rights under the plan, *see* 29 U.S.C. § 1022(a).

Because we think the district court applied the correct standard of review, we affirm its decision with respect to Tocker's benefits claim. But, we vacate and remand with respect to plaintiff's fiduciary duty claim and the denial of his motion to amend the complaint.

### DISCUSSION

■ We review *de novo* the district court's grant of summary judgment, construing the facts in the light most favorable to the non-moving party, in this case, Tocker. *Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ.*, 444 F.3d 158, 162 (2d Cir.2006). Summary judgment is appropriate only where "there is no genuine

issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

## I Standard for Reviewing Administrative Committee Determination

Tocker claims that he is entitled to additional years of credited service for his pension benefits. In adjudicating this claim, we must first determine whether the district court used the correct standard in reviewing the administrative committee's decision that appellant was not entitled to additional years of pension credit. "[A] denial of benefits challenged under [29 U.S.C.] § 1132(a)(1)(B) is to be reviewed [by a district court] under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). Where the plan does grant discretion to the administrator, a court "will not disturb the administrator's ultimate conclusion unless it is arbitrary and capricious." *Pagan v. NYNEX Pension Plan*, 52 F.3d 438, 441 (2d Cir.1995).

■ We have in the past described discretion as a "multi-faceted concept" whose contours are not clearly defined. *Morse v. Stanley*, 732 F.2d 1139, 1141 (2d Cir.1984). In recent years, the amount and type of discretion afforded a plan administrator under ERISA has received more judicial attention, and it is now settled that if a plan administrator clearly has been granted discretionary authority in the plan documents, a court will defer to the administrator's decision. *See Pagan*, 52 F.3d at 441. The grant of discretionary authority thus narrows the range of judicial oversight and shields a plan administrator's decision from a more searching and broader *de novo* review.

■ Appellant argues that we must look to the SPD in determining the proper standard. The SPD in the instant case is silent with respect to any discretion reserved by the committee. Yet appellant does not dispute the fact that the General Foods Plan itself gives discretionary authority to the administrative committee. It states that the General Foods administrative committee "shall have all powers reasonably necessary to administer the Plan and is authorized, in accordance with its provisions, to determine eligibility, to compute and determine benefits, and to determine individual rights and privileges under the Plan." The Plan further explains: "The acts, decisions, determinations, and interpretations of the [administrative committee] pursuant to the provisions of the Plan and/or the trust agreement(s) shall be conclusive." This language satisfies the concern expressed by the Supreme Court in *Firestone* that the fiduciary in that case was not one "who exercises entirely discretionary authority or control." 489 U.S. at 113, 109 S.Ct. 948 (emphasis removed).

Plaintiff contends that because the SPD is intended to be an employee's foremost resource on the terms of the Plan, *see Heidgerd v. Olin Corp.*, 906 F.2d 903, 907 (2d Cir.1990), to avoid *de novo* review by courts, the plan administrator must make plain in the SPD that the administrative committee retains discretionary authority to which courts will likely defer. This issue is one we have left unresolved. *See Mario v. P & C Food Markets, Inc.*, 313 F.3d 758, 765 (2d Cir.2002) ("Although this question is open to debate, we need not resolve it now because, in the instant case, the plan administrator's determination survives even the broader de novo review.").

■ We have also held that where the plan documents and the summary plan

description conflict, the SPD controls. *Heidgerd*, 906 F.2d at 908. Where the SPD is silent on a provision that the plan documents include, and plaintiff contends therefore the term cannot apply to him, we utilize a two-step approach to analyze plaintiff's argument. *See, e.g., Wilkins v. Mason Tenders Dist. Council Pension Fund*, 445 F.3d 572, 584–85 (2d Cir.2006); *cf. Mario*, 313 F.3d at 764. First, relying on the statutory language of ERISA and its implementing regulations, we look to see whether ERISA requires the term to be stated in the SPD. *Wilkins*, 445 F.3d at 584–85. Second, we consider whether plaintiff was likely prejudiced by the SPD's silence on the term or information at issue. *Id.* at 585.

ERISA requires plan administrators to furnish participants and beneficiaries with a summary plan description "written in a manner calculated to be understood by the average plan participant" and "sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan." 29 U.S.C. § 1022(a). The summary plan description is "an employee's primary source of information regarding employment benefits, and employees are entitled to rely on the descriptions contained in the summary." *Heidgerd*, 906 F.2d at 907. Nonetheless, the summary plan description is intended to be a summary, not a full recitation of the terms of the plan, and we do not expect that SPDs will "anticipate every possible idiosyncratic contingency that might affect a particular participant's" eligibility for benefits. *Estate of Becker v. Eastman Kodak Co.*, 120 F.3d 5, 9 (2d Cir.1997).

The ERISA statute and associated regulations require plan administrators to include certain information in the summary plan descriptions. *See* 29 U.S.C. § 1022(b); 29 C.F.R. § 2520.102–3. One such requirement under the statute is that a summary plan description describe all "circumstances which may result in disqualification, ineligibility, or denial or loss of benefits." 29 U.S.C. § 1022(b). The regulations require, for employee pension benefit plans, a statement describing all "conditions which must be met before a participant will be eligible to receive benefits," 29 C.F.R. § 2520.102–3(j)(1), and a statement "clearly identifying circumstances which may result in disqualification, ineligibility, or denial … of any benefits that a participant … might otherwise reasonably expect the plan to provide on the basis of the description of benefits," *id.* at § 2520.102–3(*l*).

Tocker does not raise, nor do we reach, whether a plan administrator's discretionary authority is a material aspect of "the remedies available under the plan for the redress of claims which are denied in whole or in part (including procedures required under section 1133 of [Title 29] )," 29 U.S.C. § 1022(b), and thereby or otherwise is required to be included in the summary plan description.

Although we have recently rejected an argument that the grant of discretion to a plan administrator alters only a procedural provision and does not affect the substance of an ERISA benefits claim, *Gibbs v. CIGNA Corporation*, 440 F.3d 571, 577 (2d Cir.2006), it is just as obvious that the level of discretion reserved to a plan administrator is not a "condition [ ] which must be met *before* a participant will be eligible to receive benefits," 29 C.F.R. § 2520.102–3(j)(1) (emphasis added). Nor is it a circumstance which may result in denial of benefits within the meaning of 29 U.S.C. § 1022(b). Our cases make clear that the circumstances referred to in § 1022 are conditions or facts that may be used by a plan administrator to deny benefits. *See*,

*e.g., Wilkins,* 445 F.3d at 584 (explaining that "mandatory prerequisite[s]" must be explained in summary plan descriptions).

In any event, even were we to find that the SPD was deficient because it did not explain the plan administrator's discretionary authority to determine benefit eligibility, we would also need to find that plaintiff was likely prejudiced by the SPD's silence. *See Burke v. Kodak Ret. Income Plan,* 336 F.3d 103, 111–13 (2d Cir.2003) (adopting a "likely prejudice" standard). Plainly, appellant was not likely to have been harmed by the SPD's failure to describe the plan administrator's discretionary authority for coverage decisions. *See Mario,* 313 F.3d at 764 ("[T]he standard of judicial review ... simply fixes the procedure to be followed *after* a denial has occurred, and therefore a plan participant cannot be prejudiced by a lack of knowledge about that procedure."); *Martin v. Blue Cross & Blue Shield,* 115 F.3d 1201, 1205 n. 4 (4th Cir.1997). Further, Tocker knew that General Foods reserved the right to "change, modify, or discontinue ... without notice" the benefits explained in the booklet, and he cannot claim to have been prejudiced by the SPD's omission of the clearer grant of discretionary authority which was contained in the General Foods Plan.

In sum, we need not rely on the SPD in determining our standard of review. The arbitrary and capricious standard of review is warranted where the plan documents provide for discretionary authority, the summary plan description does not contain any conflicting language, and the applicable statutes and regulations do not require that the SPD contain provisions addressing the issue. It is noteworthy that those of our sister circuits to have considered this issue have reached the same conclusion as we do here. *See Martin,* 115 F.3d at 1205; *Cagle v. Bruner,* 112

F.3d 1510, 1517, *reh'g en banc denied,* 124 F.3d 223 (11th Cir.1997); *Wald v. Southwestern Bell Corp.,* 83 F.3d 1002, 1006 (8th Cir.1996); *Atwood v. Newmont Gold Co.,* 45 F.3d 1317, 1321–22 (9th Cir.1995), *overruled on other grounds by Abatie v. Alta Health & Life Ins. Co.,* 458 F.3d 955 (9th Cir.2006).

## II  Review of the Administrative Committee's Decision

Having concluded that the proper standard for reviewing the administrative committee's determination is the arbitrary and capricious standard, we turn now to the committee's decision. Under the arbitrary and capricious standard, we will uphold the administrator's determination unless it is without reason or erroneous as a matter of law. *Pagan,* 52 F.3d at 442. Where the plan participant and the plan administrator offer "two competing yet reasonable interpretations of [the plan]," then "[we] must accept that offered by the administrators." *Id.* at 443.

■ Appellant's claim is one for benefits due him under the terms of his pension plan, pursuant to 29 U.S.C. § 1132(a)(1)(B). Tocker asserts he was entitled to pension credits for the 12 years that he received long-term disability benefits, from March 1990 until he attained age 65 in 2002, because the General Foods summary plan description advised that when employees became eligible for long-term disability benefits, they also would "continue to accrue Non-contributory Benefits" toward their pensions.

The administrative committee considered Tocker's appeal letter and documentation regarding his appeal. It determined that appellant had been terminated as part of the work force reduction program arrangement that he accepted effective March 1, 1990 and that termination of employment had been communicated to

him in the 1990 letters from Robert Varone. The committee reasoned that the disability provision relied upon by plaintiff in declaring that he was eligible for additional years of credited service actually provided for "*continued accrual* of credited service only to *participating employees* as defined by the pension plan." Because Tocker's long-term disability benefits began after his termination date of March 1, 1990, with a gap of a few days between the time his employment ended and the time his long-term disability benefits began, Tocker was not able *to continue* to accrue credited service toward his pension. He had ceased accruing credited service when he ceased being an employee. Further, because Tocker was no longer a participating employee, he was no longer eligible for service credits for his pension. The committee was aware of plaintiff's assertion that one cannot be terminated and placed on long-term disability, and agreed with him that typically such was the case. However, the committee reasoned that a special exception had been made to allow appellant to receive these benefits.

We cannot say that the administrative committee's decision was arbitrary or capricious. According to the Plan, an employee "remains a Participating Employee ... until his Retirement Date or the date of termination of his employment, whichever is ... [earlier]." There is ample evidence to show that plaintiff was in fact terminated as of March 1, 1990. Tocker signed numerous documents stating that he was terminated. And he made various elections of benefits, including the conversion of his life insurance, which were consistent with ending his employment. Although, as the district court pointed out, there is also evidence that Tocker was not terminated—including the declaration from his supervisor that the supervisor did not think, nor was he ever informed that Tocker was terminated—this is insufficient to show that the administrative committee's decision was arbitrary and capricious. *See Pagan,* 52 F.3d at 443.

Consequently, the administrative committee's decision that Tocker was only entitled to pension credit for the years from September 1967 until March 1990 was not arbitrary and capricious. The district court correctly affirmed this administrative determination.

### III  Tocker's Fiduciary Duty Claim

█ We turn next to plaintiff's claim that Robert Varone, acting on behalf of the General Foods Plan, breached a fiduciary duty to plaintiff by failing to inform him that he would not continue to accrue pension credits after March 1, 1990. Under ERISA § 502(a)(2) a plan beneficiary like Tocker may bring a claim for breach of fiduciary duty. *See Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 53, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). Defendants declare that this is a new claim that Tocker failed to raise before the district court. Yet, appellant insisted at oral argument before the district court that defendants breached their fiduciary duty to him. Accordingly, we cannot agree with defendants that Tocker's claim is a new one not raised in the trial court.

In its memorandum decision and order granting summary judgment for defendants, the district court did not address Tocker's fiduciary duty claim. It is appropriate for the district court to address this claim in the first instance. *See Bouboulis v. Transp. Workers Union of Am.,* 442 F.3d 55, 66 (2d Cir.2006). As a consequence, we must remand the fiduciary duty claim so that the district court may consider it.

We note, however, that our conclusion that the district court should hear this issue in the first instance has no bearing

on the merits of appellant's contentions. We thus do not mean to suggest that Tocker necessarily has a viable claim for breach of fiduciary duty, especially in light of Varone's March 14, 1990 letter to Tocker detailing his benefits upon termination, which indicated Tocker would begin to receive pension benefits in 1992 and specified what those payments would be. But that, we think, raises questions that ought to be resolved first by the district court.

### IV Motion to Amend Complaint to Add Necessary Parties

Plaintiff filed his complaint against Philip Morris Companies, Inc., a/k/a Altria Group, Inc., Kraft Foods Inc., and General Foods Corp. In so doing he failed to name as defendants either the General Foods Plan or the administrative committee. After defendants moved for summary judgment, plaintiff moved to amend his complaint to add these necessary parties.

Federal Rule of Civil Procedure 15(a) provides that leave to amend a complaint should be "freely given when justice so requires." Fed.R.Civ.P. 15(a). However, a motion for leave to amend a complaint may be denied when amendment would be futile. *Ellis v. Chao*, 336 F.3d 114, 127 (2d Cir.2003). In light of our disposition remanding Tocker's fiduciary duty claim, we also must vacate and remand the district court's denial of Tocker's motion to amend his complaint to add necessary parties. On remand, the district court should again consider whether it would be futile to amend Tocker's complaint as it proceeds with plaintiff's fiduciary duty claim.

### CONCLUSION

For the reasons stated, we affirm that part of the judgment of the district court which properly determined that the administrative committee's benefits decision was not arbitrary and capricious. However, we vacate and remand that part of the judgment that dismissed plaintiff's fiduciary duty claim.