**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**March 23, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

KATHY L. BUCKARDT,

      Plaintiff-Appellee,

v.

ALBERTSON'S, INC. and VPA,
Inc.,

      Defendants-Appellants.

No. 06-8005

(D.C. No. 04-CV-99-B)
(D. Wyoming)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE, EBEL,** and **GORSUCH**, Circuit Judges.

Albertson's, Inc. ("Albertson's"), appeals the district court's grant of

summary judgment in favor of Kathy Buckardt ("Buckardt"), who filed a

claim under the Employee Retirement Income Security Act ("ERISA"), 29

U.S.C. § 1132, after Albertson's denied her claim for long-term disability

benefits. The district court granted Buckardt's motion for summary

judgment because it determined that Albertson's denial of benefits was

---

[*]This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be
cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

arbitrary and capricious. On appeal, Albertson's argues there was substantial evidence to support its denial of benefits and that the district court, despite claiming to review the decision under the arbitrary and capricious standard, erroneously reviewed the decision de novo. We exercise jurisdiction under 28 U.S.C. § 1291 and REVERSE and REMAND.

I.

Buckardt worked as a pharmacy manager at one of Albertson's stores in Wyoming and participated in the company's long-term disability plan ("the Plan"), which was administered by Albertson's through its Benefits Department. Under the Plan's terms, an employee is permitted to receive long-term disability benefits if the employee is totally disabled. The Plan defines "Total Disability" to mean:

> the complete inability of the Employee to perform any and every duty of his or her regular occupation with the Employer; provided, that <u>if benefits have been paid pursuant to Section 3.01 for 24 months of any continuous period of Total Disability, then for the balance of the period of Total Disability following such 24-month period, Total Disability shall mean the complete inability of the Employee to perform any and every duty of any gainful occupation for which he or she is reasonably fitted by training, education or experience</u>, or may reasonably become qualified based on his or her training, education or experience, subject to the application of Rehabilitative Employment.
> Record on Appeal ("ROA") at 111 (emphasis added).

The Plan stated that the determination of Total Disability "shall be determined by the Plan Administrator in its sole and absolute discretion."

Id. The Plan grants its administrator "[t]he discretion to make fact findings and to determine all questions relating to the eligibility of Employees for benefits, as well as the amount of payment of benefits" and the power "to construe and interpret the Plan and the Trust." Id. at 132.

In May of 2000, Buckardt injured her back at work and underwent several surgeries in the following months. In September of 2000, Albertson's determined that Buckardt was totally disabled based upon her inability to perform her regular occupation of pharmacy manager, and awarded her long-term disability benefits. In September of 2002, Buckardt was required to demonstrate that she met the more stringent requirement of total disability required under the Plan if "benefits have been paid pursuant to Section 3.01 for 24 months of any continuous period of Total Disability. . . ." Id. at 111. To meet this more stringent definition of total disability, Buckardt would have to be unable to "perform any and every duty of any gainful occupation for which . . . she [wa]s reasonably fitted by training, education or experience. . . ." Id. (emphasis added).

In conjunction with her two-year evaluation, Albertson's requested that Buckardt undergo a Functional Capacity Evaluation ("FCE"), which would test her functional capabilities through a battery of objective tests. Buckardt underwent an FCE on August 28, 2002, with Hands On Physical Therapy. The physical therapist who administered the FCE commented that

Buckardt's "Global Effort Rating" was questionable and that Buckardt perceived her abilities to perform work tasks at well below her tested abilities. However, the physical therapist noted that Buckardt had certain limitations with lifting, carrying, climbing, and sitting. Specifically, he noted that Buckardt was "frequently up and down from her chair" and that the longest times she sat was eleven minutes. Id. at 38. The physical therapist concluded,

> [i]n terms of access to the job market, Kathy Buckardt performed at a modified "Sedentary" physical demand characteristic level as defined by the U.S. Department of Labor. At this level she could not return to her job as a Pharmacist. It must be noted that patient self limited her weighted activities. She was not required to maintain her seat posture (she was allowed to transition her posture as she wanted). She was able to perform most of her activities and postures at a higher level than she rated herself in her interview and in the *P.A.C.T. Special Function Sort*. Id.

On September 20, 2002, Albertson's Medical Review Committee, consisting of members of Albertson's Benefits Department, met with a consulting physician, Dr. James Moreland, to review Buckardt's claim. Albertson's informed Buckardt on October 3, 2002, that "[a]ccording to the Functional Capacities Evaluation that was submitted for this review, it was determined that you can perform sedentary work. Therefore, you no longer meet the Plan's definition of 'Total Disability' and your claim for Long Term Disability benefits has been terminated." Id. at 41.

-4-

Buckardt appealed this decision and submitted, with her appeal, a letter from her husband and a statement from Dr. Margaret Irish, one of her treating physicians. In her appeal, Buckardt urged Albertson's to consider her problems with pain and commented,

> there are two main problems in my seeking some form of sedentary work. The first is the great pain that I experience that is very unrelenting. It is distracting to be in such pain and attempt to perform any gainful employment even if someone would be willing to hire me with such a debilitating handicap. Second, to just ease the pain slightly, I am on high doses of narcotics. It has caused me much embarrassment to feel so dulled by the drugs. Id. at 43-44.

Buckardt included a statement from her husband, in which he reiterated Buckardt's problems with pain, noting that "pain rules her life, she has to plan every breath, every movement, and every activeity [sic] around her pain." Id. at 45.

Finally, Buckardt included a letter from Dr. Irish, one of her treating physicians. Dr. Irish, who specialized in physical medicine and rehabilitation, was a new associate of Buckardt's regular physician and had seen Buckardt on two occasions. Dr. Irish commented on Buckardt's FCE evaluation and stated,

> [e]ven though she was rated in the modified sedentary category, her education and training as well as job experience and requirements do not fit into the modified sedentary category. Her job as a retail pharmacist would fit more into the light category as far as lifting, but in the medium category as far [as] repetitive reaching and grasping and in the heavy category as far

as prolonged requirement for standing and walking. Id. at 47. Dr. Irish concluded,

> [a]s an experienced physical medicine and rehabilitation physician, I would state without a doubt at this time Ms. Kathy Buckardt is totally disabled. She currently is unable to "perform any and every duty of any gainful occupation." At this time, she would not even be able to tolerate undergoing rehabilitative employment or vocational rehabilitation. Her pain is too distracting and very limiting with mobility currently. Id. at 48.

On November 22, 2002, the Medical Review Committee met with Dr. Theodore Walters, a consulting physician, to address Buckardt's appeal, and once again denied benefits. Buckardt appealed this decision. On December 6, 2002, Buckardt was awarded Social Security Disability Benefits ("SSDB") effective as of November of 2000.

Buckardt underwent a second FCE on January 22, 2003, with WorkSTEPS, Inc., which sought to "objectively quantify current maximum voluntary physical capacity." Id. at 60. The physical therapist who administered this FCE commented,

> [t]he limited sitting and standing tolerance Mrs. Buckardt exhibits today would preclude her from a return to a Pharmacy position at this time. On several occasions today she stood for 4-5 minutes maximum, then sat down for several minutes before needing to stand up, more frequently standing only 2-3 minutes before sitting down again. During the 2 hours, 15 minutes evaluation, 2 hours was spent sitting and standing. The maximum sitting time was 10 minutes, however, more often she sat less than 5 minutes before standing up or walking. She demonstrated this frequent posture changes [sic] while filing [sic] out pain diagrams at the beginning of testing. Id. at 68.

He commented, however, that Buckardt appeared to demonstrate some behaviors that were disproportionate to the actual functional loss caused by her impairment. He concluded Buckardt would qualify for the sedentary physical demand characteristic level as defined by the U. S. Department of Labor, with a reduced lifting level.

In April 4, 2003, Albertson's Medical Review Committee once again determined that Buckardt was not totally disabled because the "second FCE also indicates she can perform at a sedentary work level. Therefore she is not disabled from any gainful employment and does not meet the Plan's definition of total disability." Id. at 76.

Buckardt appealed again on June 23, 2003, through a letter written by her attorney. Albertson's informed Buckardt that this would be her third and final appeal. On July 11, 2003, the Medical Review Committee again denied Buckardt benefits, determining that, "[n]o new medical documentation was provided to support her claims she is totally disabled from any occupation (please cite plan definition for disabled [sic] after 24 mos.)." Id. at 82. Buckardt was informed of this decision by a letter and reminded that she had exhausted her appeals process. Buckardt then brought her ERISA claim in the District of Wyoming pursuant to 29 U.S.C. § 1132(a)(1)(B). The district court granted summary judgment in Buckardt's favor and this appealed followed.

II.

The district court determined, and the parties do not dispute, that the Plan granted Albertson's discretionary authority to determine eligibility for benefits. Therefore, the district court properly concluded that it should review Albertson's decision under an arbitrary and capricious, or abuse of discretion, standard.[1] Gaither v. Aetna Life Ins. Co., 388 F.3d 759, 767 (10th Cir. 2004) (when an ERISA plan grants a plan administrator discretion in administering the plan, we will uphold its decisions unless they are arbitrary and capricious). Because Buckardt has not raised the issue of a potential conflict of interest warranting an enhanced standard of review, we assume that the pure arbitrary and capricious standard applies. See Fought v. UNUM Life Ins. Co. of Am., 379 F.3d 997, 1003 (10th Cir. 2004) (noting that this court applies a less deferential arbitrary and capricious standard when the plan administrator has a conflict of interest); Gaither, 394 F.3d at 801.

This district court's determination of whether an ERISA benefits decision is arbitrary and capricious is a legal question reviewed de novo.

---

[1] This circuit has concluded that, in the ERISA context, the arbitrary and capricious standard is equated with the abuse of discretion standard and there is a semantic, not substantive, difference between the terms. Chambers v. Family Health Plan Corp., 100 F.3d 818, 825 n.1 (10th Cir. 1996).

Caldwell v. Life Ins. Co. of N. Am., 287 F.3d 1276, 1282 (10th Cir. 2002).

A decision is arbitrary and capricious if it is unsupported by substantial evidence. Sandoval v. Aetna Life & Cas. Ins. Co., 967 F.2d 377, 382 (10th Cir. 1992). "'Substantial evidence is such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the [decisionmaker].' Substantial evidence requires 'more than a scintilla but less than a preponderance.'" Id. (citations omitted) "Substantiality of the evidence is based upon the record as a whole. In determining whether the evidence in support of the administrator's decision is substantial, we must take[] into account whatever in the record fairly detracts from its weight." Caldwell, 287 F.3d at 1282 (internal quotation marks omitted).

When reviewing under the arbitrary and capricious standard, "[t]he Administrator['s] decision need not be the only logical one nor even the best one. It need only be sufficiently supported by the facts within [his] knowledge to counter a claim that it was arbitrary and capricious." Kimber v. Thiokol Corp., 196 F.3d 1092, 1098 (10th Cir. 1999). In reviewing the plan administrator's decision under an arbitrary and capricious standard, a district court is limited to the administrative record, or the materials compiled by the plan administrator in making the decision. Sandoval, 967 F.2d at 380.

This court reviews a grant of summary judgment de novo, applying the

same legal standard used by the district court. <u>Kimber</u>, 196 F.3d at 1097. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." <u>Pitman v. Blue Cross & Blue Shield of Oklahoma</u>, 217 F.3d 1291, 1295 (10th Cir. 2000) (citing FED. R. CIV. P. 56(c)).

On appeal, Albertson's argues there was substantial evidence in the record to support its denial of benefits and that the district court, despite claiming to apply an arbitrary and capricious standard of review, actually and erroneously reviewed its decision to deny Buckardt benefits under a de novo standard. Specifically, Albertson's claims that the district court disregarded the findings of two consulting physicians and the results of two independent FCEs in the record and inappropriately considered Buckardt's award of SSDB. In response, Buckardt contends that there was no medical evidence in the record to support Albertson's denial of benefits and the record was replete with evidence that Buckardt met the Plan's definition of total disability.

Albertson's first argues that the district court improperly ignored the opinions of two consulting physicians, Dr. James Moreland and Dr. Theodore Walters, who reviewed Buckardt's claim and determined that she

was not totally disabled under the Plan. In response, Buckardt correctly argues that the record contains no medical findings or opinions of these two consulting physicians. The record merely contains the initials "JM" and "TW" on two administrative forms denying Buckardt benefits and upholding her denial of benefits. There is no verification in the record of who these initials identify. Even if Dr. Moreland and Dr. Walters initialed the cited forms, there is no indication what their initials were meant to signify. Because these initials do not represent the medical opinions of two consulting physicians, there were properly disregarded by the district court.

Albertson's next argues that the district court improperly discounted the results of two independent FCEs, both of which indicated that Buckardt was capable of modified sedentary work. Buckardt counters that these FCEs were not medical evaluations and offered no opinion on what type of sedentary work she could perform. In addition, Buckardt contends that the record reveals that she cannot undergo rehabilitative employment or vocational rehabilitation because of her pain.

The therapist who administered Buckardt's first FCE concluded that she was capable of modified sedentary work as long as she could transition between standing and sitting as needed. He noted that Buckardt self-limited her weighted activities and was able to perform most of her activities and postures at a higher level than she had rated herself. The therapist also

noted that she limped less when she was unaware of observation and did not perform consistently throughout the functional test session.

The second FCE was performed five months later by a different therapist at a different facility. This therapist noted Buckardt's complaints of constant pain and her use of pain-relieving drugs. He commented that Buckardt experienced high pain levels after performing reaching activities, did not exhibit pain magnification, was cooperative during testing, and that validity scores demonstrated maximum effort in at least four of five categories. The therapist stated that Buckardt reported high pain levels and was "tearful just prior to leaving," but ultimately determined that Buckardt met a physical demand classification for sedentary work, with a limitation on her lifting requirements. ROA at 67.

Both physical therapists who administered Buckardt's FCEs reached the same ultimate conclusion that Buckardt was capable of modified sedentary work. The results of these two independent FCEs provide more than a scintilla of evidence that Buckardt does not have "the complete inability" to "perform any and every duty of any gainful occupation for which . . . she is reasonably fitted by training, education or experience. . . ." Id. at 111 (emphasis added). The FCEs contain some contradictory findings, including that Buckardt had to change postures frequently during the evaluation, experienced high pain levels at certain times during the testing,

reported difficulty sitting, standing, walking, and lifting, and reported pain that prevented her from hobbies, sports, sexual relations, chores, and work. However, despite noting these difficulties, both therapists ultimately concluded that Buckardt was capable of modified sedentary work. When reviewing under the arbitrary and capricious standard, "[t]he Administrator['s] decision need not be the only logical one nor even the best one. It need only be sufficiently supported by facts within [his] knowledge to counter a claim that it was arbitrary and capricious." Kimber, 196 F.3d at 1098.

The district court appeared to discount the results of Buckardt's FCEs because there was no evidence in the record as to what sedentary work she was "reasonably fitted by training, education or experience" to perform. ROA at 111. However, the Plan does not require Albertson's to identify alternative jobs as part of its denial of benefits and Buckardt has cited no authority to the contrary. Instead, Buckardt argues that the FCEs are not medical findings and that other evidence in the record demonstrates that she meets the Plan's definition of total disability. She notes that her treating physician determined that she is completely unable to perform any and every duty of any gainful employment and that she is unable to undergo vocational rehabilitation. Finally, she urges that the district court did not err because it merely considered, but did not rely upon, her award of SSDB in determining

that Albertson's decision was arbitrary and capricious.

It is true that "[s]ubstantiality of the evidence is based upon the record as a whole. In determining whether the evidence in support of the administrator's decision is substantial, we must 'take[] into account whatever in the record fairly detracts from its weight.'" Caldwell, 287 F.3d at 1282. However, the challenges Buckardt levies against the results of the FCEs do not sufficiently negate the weight of evidence in support of Albertson's decision to deny benefits. First, Buckardt cites no authority for her argument that Albertson's cannot rely upon the FCE findings because they are not medical opinions. Several circuits have concluded that the results of FCEs may serve as substantial evidence for a plan administrator's decision to deny benefits. See Gannon v. Metro. Life Ins. Co., 360 F.3d 211, 213 (1st Cir. 2004) (concluding that it was reasonable for a plan administrator to rely upon an FCE as evidence supporting a determination that claimant did not meet plan's definition of disability); Jackson v. Metro. Life Ins. Co., 303 F.3d 884, 888 (8th Cir. 2002) (noting that an FCE's determination that claimant could do light work was enough to constitute substantial evidence for denial of benefits).

While it is true that Dr. Irish concluded that Buckardt was currently unable "to perform any and every duty of any gainful occupation" and that Buckardt's pain levels would prohibit her from undergoing rehabilitative

-14-

employment or vocational rehabilitation, an ERISA plan administrator is not required to give special weight to the opinion of a treating physician. ROC at 48. As stated by the Supreme Court,

> [p]lan administrators, of course, may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician. But, we hold, courts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation. Black & Decker Disability Plan v. Nord, 538 U.S. 822, 834 (2003).

Finally, it is unclear whether the district court relied upon Buckardt's award of SSDB in determining that Albertson's denial of benefits was arbitrary and capricious. The district court did note that Buckardt had received SSDB benefits, which meant that she was not performing substantial gainful activity, had a severe medically determinable impairment, and was unable to adjust from her past work to other work. However, our focus must remain upon the issue presented here: whether Buckardt met the Plan's definition of total disability. Because the Plan's requirements are not identical to the requirements for SSDB, whether Buckardt met the Social Security Administration's requirements for SSDB is not relevant to our inquiry, and should not be considered.

The results of the FCEs provide more than a scintilla of evidence in support of Albertson's denial of benefits and "a reasonable mind might

accept [this evidence] as adequate to support the conclusion reached by [Albertson's]." Sandoval, 967 F.2d at 382. Because the results of both FCEs provide substantial evidence upon which Albertson's could have based its decision to deny Buckardt long-term disability benefits, the district court erred in granting Buckardt summary judgment on her ERISA claim.

III.

We REVERSE the district court's grant of summary judgment in Buckardt's favor and REMAND with directions to the district court to enter judgment in favor of Albertson's.

Entered for the Court

Mary Beck Briscoe
Circuit Judge