BRISCOE, J.,
dissenting:
I respectfully dissent. In my view, the administrative record firmly establishes that MetLife’s decision to terminate Chalker’s disability benefits was arbitrary and capricious because it was based, in substantial part, on a critically flawed Functional Capacity Evaluation (FCE) summary report. Further, it is apparent from the record on appeal that the district court erred in concluding that Chalker’s suit was time-barred. I would reverse and remand for further proceedings.
I.

Defendants’ termination of Chalker’s disability benefits

Although I agree with the majority’s resolution of most of the challenges leveled by Chalker against MetLife’s decision, I disagree with the majority’s conclusion, in Section II.B.2, that the FCE summary report was “not so flawed that it could not have provided MetLife with any reasonable basis to terminate Chalker’s [long-term disability] benefits.” 0 & J at 12-13. On this key point, I conclude, after carefully examining the administrative record, that reasonable minds simply could not *146 accept as sufficient the conclusions reached in the FCE summary report. Adamson v. Unum Life Ins. Co. of Am., 455 F.3d 1209, 1212 (10th Cir.2006).
To begin with, the detailed findings reported in the FCE summary report are inconsistent with, and ultimately fail to support, the conclusion reached in the FCE summary report. In particular, the FCE summary report acknowledged that Chalker, due to what it described as “intolerable pain” (or, alternatively, as “8” or “8-9” on a “0-10 subjective pain scale”), was unable to complete 19 of the 21 tasks that were part of the FCE, and also “performed poorly on the sustained sitting task due to high pain scores and a high frequency of postural adjustments.... ” Aplee. Supp.App. at 476. In addition, the FCE summary report acknowledged that Chalker’s “tolerances for Light level work for the 8 hour day [we]re difficult to predict given the extent of [his] self-limiting behavior....” Id. at 475. Nevertheless, the FCE summary report effectively criticized Chalker for failing to “demonstrate sufficient signs of maximal physical effort on the majority of the tasks,” id., and ultimately concluded he was “capable of performing physical work at the Light level, as defined by the U.S. Department of Labor in the Dictionary of Occupational Titles.” Id.
Moreover, the FCE summary report makes no mention of the fact that Chalker, according to his own undisputed reports and those of his treating physician, was on pain medication during the FCE and was incapacitated by pain for several days following the FCE. That evidence, as Chalk-er asserts, likewise calls into question the FCE summary report’s conclusion that he was capable of performing “Light level” work on a full-time (8 hours per day, 40 hours per week) basis.[1] See Force v. Ameritech Corp., Inc., 250 Fed.Appx. 662, 669 (6th Cir.2007) (concluding that administrator’s decision to deny benefits was arbitrary and capricious because, in pertinent part, it was based on an internally inconsistent FCE).
Although MetLife’s decision to terminate Chalker’s long-term disability benefits was not based solely on the FCE summary report, the administrative record firmly establishes that it played a significant role in MetLife’s decision. To begin with, it is clear that it was the FCE summary report’s conclusion that Chalker could perform full-time work at a “Light level” that led to MetLife’s preparation of the Employability Assessment and Labor Market Analysis and, in turn, that report’s conclusion that Chalker was capable of working full-time in several alternative management-type roles. Further, it is clear from the administrative record that MetLife’s consulting physicians placed significant weight on the FCE summary report and the related Employability Assessment. For example, Dr. Schmidt, in her April 2004 final report, opined (without having personally examined Chalker) that the conclusion set forth in the FCE summary report “represented] a minimum, not a maximum, work capacity,” and that *147 “there was no objective evidence that [Chalker] would be unable to work in a light capacity on a full-time basis.” Aplee. Supp.App. at 707. Similarly, Dr. Mody noted in her written report (likewise without having personally examined Chalker) that, according to the FCE summary report, “Chalker was found to be capable of sedentary level activities.” Id. at 573. In turn, MetLife’s own June 3, 2004 letter of denial noted that, according to the Employability Assessment, Chalker “ha[d] the ability to work at a light level” and had identified “[t]hree potential occupations for which [he was] qualified.... ” Id. at 520. Likewise, MetLife’s final denial letter of October 5, 2004, noted that Chalker’s benefits “were [originally] terminated based” in part on the results of the FCE and the Employability Assessment, id. at 611, effectively criticized Chalker for engaging in “self-limiting” behavior during the FCE, id. at 612, and noted that, according to the Employability Assessment, he was capable of performing other alternative occupations, id.
In summary, MetLife’s decision to terminate Chalker’s long-term disability benefits was ai'bitrary and capricious due to the significant reliance that MetLife and its consulting physicians placed on the flawed FCE summary report. Accordingly, assuming that Chalker’s suit was timely filed, the proper route is to reverse the judgment of the district court and remand to MetLife for further consideration of Chalker’s claim for long-term disability benefits.

Timeliness of Chalker’s lawsuit

As the majority notes, the district court concluded, as an alternative basis for granting judgment in favor of defendants, that Chalker’s suit was untimely filed. The district court’s ruling on this issue is subject to de novo review. Wright v. Southwestern Bell Tel. Co., 925 F.2d 1288, 1290 (10th Cir.1991) (“We review a district court’s ruling on the applicability of a[n] [ERISA] statute of limitations de novo.”).
ERISA contains no statute of limitations which governs claims under section 1132(a)(1)(B) or section 1132(c). Courts therefore look to the “most analogous” state statute of limitations, e.g., Held v. Manufacturers Hanover Leasing Corp., 912 F.2d 1197, 1201 and n. 4 (10th Cir. 1990), or if the plan itself contains a limitations period, to the plan if the contractual limitations period is reasonable. E.g., Northlake Reg’l Med. Ctr. v. Waffle House Sys. Employee Benefit Plan, 160 F.3d 1301, 1303 (11th Cir.1998); Doe v. Blue Cross & Blue Shield United of Wis., 112 F.3d 869, 874-75 (7th Cir.1997).
Here, it is undisputed that Section 10.10 of the Plan purports to set forth a contractual limitations period:
Limitation of Action. In addition to the provisions of Section 10.9 [requiring exhaustion of plan remedies], no action at law or in equity shall be brought to recover Benefits under the Plan prior to the expiration of sixty (60) days after a claim has been filed in accordance with the requirements of the Plan, nor shall an action be brought at all unless within one (1) year after expiration of the time permitted under the Plan for furnishing proof of disability to the Claims Administrator.
Aplee. SuppApp. at 70. Defendants argued in their motion for judgment on the administrative record, and the district court agreed, that this one-year limitations period was controlling, “accrued on the date that MetLife rendered its final decision on Chalker’s administrative appeal of the termination of his benefits,” and expired one year later, on or about October 5, 2005, approximately two weeks before Chalker filed this action (October 21, *148 2005). App. at 35 (defendants’ motion for judgment on the administrative record).

a) Ambiguity of contractual limitations provision

Chalker contends that “Defendants’ contractual limitations provision is unenforceable because it is not presented in a clear manner.” Aplt. Br. at 23. In this regard, Chalker notes that the “contractual limitations provision ... does not appear within the section of the Plan dealing with claim review or appeal procedures,” but instead “appears within the ‘General Provisions’ section of the Plan, buried amidst legal boilerplate relating to choice of law and severability.” Id. at 20. He also asserts that “the specific language of Defendants’ contractual limitations provision is at best confusing, and at worst unintelligible.” Id. In particular, Chalker contends that the phrase “expiration of the time permitted ... for furnishing proof of disability,” as used in the provision, is unclear.
Addressing Chalker’s contentions in order, the positioning of the contractual limitations provision within the Plan itself does not appear to be problematic. To be sure, the contractual limitations provision is contained in Article X of the Plan, which outlines the Plan’s “General Provisions,” rather than Article VIII, which addresses the Plan’s “Claims Procedure.” That fact standing alone, however, does not appear to render the contractual limitations provision unenforceable.
Chalker’s contentions regarding the lack of clarity of the contractual limitations provision, on the other hand, have merit. As noted by Chalker, the provision states that the one-year limitations period begins running “after expiration of the time permitted under the Plan for furnishing proof of disability to the Claims Administrator,” Aplee. Supp.App. at 70, yet nowhere does the Plan expressly set forth any time period for “furnishing proof of disability to the Claims Administrator.” In the district court’s view, “[t]he ‘expiration of the time permitted ... for furnishing proof of disability’ clearly contemplate[d] the denial of benefits after exhaustion of administrative remedies,” and “[tjhere c[ould] be no other reasonable interpretation for this particular provision within the Plan.” App. at 103. The district court’s analysis on this point is suspect, however, because the phrase “furnishing proof of disability” clearly focuses on the act of the claimant, i.e., submitting or furnishing documents or other evidence to the claims administrator, and thus contemplates a point in time prior to the claims administrator making a final determination on a claim for benefits or on the appeal of a denial of benefits. Thus, not only does defendants’ purported construction of the contractual limitations provision fail to comport with its language, this critical portion of the contractual limitations provision is not “written in a manner clearly calculated to be understood by the average plan participant,” as required by Section 1022(a) of ERISA, 29 U.S.C. § 1132(a). Accordingly, the consequences of defendants’ inaccurate drafting should fall squarely on them, rather than on Chalker. See Chiles v. Ceridian Carp., 95 F.3d 1505,1518.

b) SPD’s silence as to contractual limitations period

Chalker further contends “it is undisputed that Defendants’ contractual limitations provision does not appear within the SPD.” Aplt. Br. at 18. Thus, he contends, “such provision is in violation of 29 U.S.C. Section 1022(a), and is unenforceable against [him].” Id. Chalker also asserts, and correctly so, that the district court failed to address this argument.
“Where the SPD [at issue] is silent on a provision that the plan documents include, *149 and plaintiff contends therefore the term cannot apply to him,” “a two-step approach” must be used “to analyze plaintiffs argument.” Tocker v. Philip Morris Co., 470 F.3d 481, 488 (2d Cir.2006). “First, relying on the statutory language of ERISA and its implementing regulations,” the court must “look to see whether ERISA requires the term to be stated in the SPD.” Id. “Second,” the court must “consider whether plaintiff was likely prejudiced by the SPD’s silence on the term or information at issue.” Id.; see Chiles, 95 F.3d at 1519 (holding that, where an SPD incorrectly describes Plan benefits, the claimant must demonstrate, in order to secure relief, that he significantly relied upon, or was possibly prejudiced by, the faulty plan description).
ERISA’s statutory language provides, in pertinent part, that “[t]he summary plan description shall contain” information regarding “the remedies available under the plan for the redress of claims which are denied in whole or in part....” 29 U.S.C. § 1022(b). Although this statutory language does not speak directly to the filing of a lawsuit under ERISA or the limitations period that applies to the filing of such a lawsuit, ERISA’s implementing regulations do. Specifically, 29 C.F.R. § 2520.102-3 outlines in substantial detail the contents that must be included in the summary plan description. Among those requisite contents are:
The procedures governing claims for benefits ..., applicable time limits, and remedies available under the plan for redress of claims which are denied in whole or in part....
29 C.F.R. § 2520.102-3(s) (emphasis added). In my view, this regulatory reference to “applicable time limits,” particularly since it is mentioned in the same sentence as “procedures” and “remedies,” includes the applicable time limits, after administrative appeals have been exhausted, for filing suit to challenge a denial of benefits (especially if the time period for doing so is controlled by the plan at issue and is shorter than the otherwise applicable statute of limitations).
Reviewing the SPD at issue here, it is clear that it failed to satisfy these regulatory requirements. To be sure, the SPD outlined in detail the administrative appeal procedures available to a claimant whose claim had been denied, including the time limits applicable to those procedures. Aplee. SuppApp. at 25. The SPD also contained a lengthy section entitled “YOUR RIGHTS UNDER ERISA,” which indicated, in pertinent part, “If you have a claim for benefits that is denied or ignored in whole or in part, you may file suit in a state or federal court.” Id. at 27. This same section also indicated, in pertinent part, that “[i]f you [the claimant] have any questions about ... your rights under ERISA, you should contact the nearest office of the Pension and Welfare Benefits Administration, U.S. Department of Labor, listed in your telephone directory, or the Division of Technical Assistance and Inquiries [in] ... Washington, DC.... ” Id. Notably, the SPD made no mention of the generally applicable time limits for filing suit under ERISA, or of the specific time limitation for doing so that was set forth in the Plan itself. Thus, a plan participant reviewing and relying on the SPD would not have been aware of the Plan’s purported one-year time period for filing suit, and, had they contacted either of the federal offices listed in the SPD to inquire about the time for filing suit, would likely have been told only of the rule generally applicable to ERISA law suits. In other words, the federal offices listed in the SPD would not have known about the unique, one-year limitations period set forth in the Plan.
*150 That leads to the second question in the two-part inquiry, i.e., was Chalker “likely prejudiced” by the SPD’s silence on this matter? In other words, given the circumstances at issue here, is it “probable” that Chalker would have filed his action within the one-year contractual limitations period had “the SPD been adequate”? Wilkins v. Mason Tenders Disk Council Pension Fund, 445 F.3d 572, 585 (2d Cir.2006). The administrative record compiled by defendants contains nothing relevant to this inquiry (e.g., a letter from MetLife to Chalker advising him of the one-year contractual limitations period). Nor does Chalker’s response to defendants’ motion for judgment (e.g., an affidavit from Chalk-er), although that is understandable in light of the fact that defendants’ motion was expressly based solely on the administrative record. Given the absence of any significant evidence on the “likely prejudice” issue, the best course in my view it to remand this case to the district court for further proceedings on the issue.[2] See Chiles, 95 F.3d at 1519 (“we leave it to the district court to determine the issue of reliance”).
II.
For the reasons outlined above, I would reverse the judgment of the district court and remand for further proceedings on the issue of whether Chalker was “likely prejudiced” by the failure of the Summary Plan Description to inform him of the one-year contractual limitations provision. If, on remand, the district court determines that Chalker was “likely prejudiced,” then the district court should remand the case to MetLife for further consideration of Chalker’s claim for longterm disability benefits.

. In Buckardt v. Albertson's, Inc., 221 Fed. Appx. 730, 736-37 (10th Cir.2007), this court noted the existence of "contradictory findings” in two FCEs performed on the plaintiff in that case, but nevertheless concluded that the administrator’s decision to deny benefits was neither arbitrary or capricious. Buckardt is distinguishable, however, because (a) the internal inconsistencies cited by the plaintiff in that case were nowhere near as serious as those at issue here, (b) there is no indication that the FCEs in Buckardt failed to account for critical information regarding the plaintiff, as is the case here, and (c) two FCEs were performed in Buckardt, and the two physical therapists who performed them independently concluded that the plaintiff was capable of performing modified sedentary work.

. In the absence of a remand, it appears more likely than not that Chalker was prejudiced by the SPD’s silence as to the existence of a contractual limitations period. ”[T]he SPD is an employee’s primary source of information regarding employment benefits, and employees are entitled to rely on the descriptions contained in the summary.” Mario v. P & C Food Mkts., Inc., 313 F.3d 758, 765 (2d Cir. 2002) (internal quotation marks omitted); see Chiles, 95 F.3d at 1519 (“the purpose of the SPD is to give employees an understanding of the plan upon which they are entitled to rely”). An employee in Chalker’s situation who relied exclusively on the SPD at issue in this case, including calling one or both of the federal offices listed in the SPD, would not have been aware of the one-year limitations period set forth in the Plan, and instead presumably would have relied on the general principles of law applicable to ERISA claims. Under those principles, an action seeking benefits under ERISA must comply with the “most analogous” state statute of limitations. Held v. Manufacturers Hanover Leasing Corp., 912 F.2d 1197 (10th Cir. 1990). In this case, which was brought in Utah, the most analogous state statute of limitations is Utah's three-year statute of limitations applicable to written policies or contracts of first party insurance, Utah Code Ann. § 31A-21-313(1). Lang v. Aetna Life Ins. Co., 196 F.3d 1102, 1104 (10th Cir. 1999) (holding that this statute was the most analogous state statute for purposes of ERISA action filed in Utah). Thus, absent the one-year limitations period set forth in the Plan, Chalker would have had three years in which to file suit challenging the denial of his administrative appeal, and his action indisputably would have been timely-